In re the Marriage of Sandra
K. SHIRK, Respondent,

v.

Glen M. SHIRK, Petitioner, Appellant.

No. C2–95–2563.

Supreme Court of Minnesota.

April 10, 1997.

Mary Alice C. Richardson, Rochester, Sharon Buffington, Stillwater, for appellant.

Jill I. Frieders, Rochester, for respondent.

Minnesota State Bar Ass'n, Family Law Section, Patricia A. O'Gorman, Committee Chair, Cottage Grove, amicus curiae.

## OPINION

STRINGER, Justice.

We consider whether a sexual relationship between an attorney and his client, during the course of representation, is grounds for reopening a final judgment and decree of divorce pursuant to Minn.Stat. § 518.145 (1996).

On April 25, 1994, respondent Sandra Shirk's (Ms. Shirk) attorney John Mulcahey (Mulcahey) filed a petition seeking to dissolve her 29–year marriage to appellant Glen Shirk (Mr. Shirk). The petition requested that Ms. Shirk be awarded a division of the parties' marital property as well as spousal support. Mulcahey prepared interrogatories and served them on Mr. Shirk, but they were returned by Mr. Shirk's attorney, unsigned, with the suggestion that the parties proceed by informal discovery in order to "avoid going through costly interrogatories." At Ms. Shirk's request, because she was having serious financial difficulties, Mulcahey prepared an application and motion for temporary spousal maintenance and filed a supporting affidavit of Ms. Shirk alleging:

1) Mr. Shirk was living in their home while she was living in an apartment.

2) Mr. Shirk owned a business called "Ye Olde Butcher Shoppe," earned $33,800 per year, and that his claimed earnings were misleading and lower than the actual amount.

3) Mr. Shirk was able to accumulate a retirement account of $150,000, make house and boat payments, and take fishing and hunting vacations on a reportedly limited budget.

4) Ms. Shirk retired in order to take advantage of an early retirement package rather than be fired and lose the opportunity to receive retirement benefits. Until that point, Ms. Shirk had earned $38,000–39,000 per year.

5) Ms. Shirk had no steady income, no liquid assets, and possessed only some personal items taken from the home.

Temporary maintenance in the amount of $1800 per month was requested by Ms. Shirk, as well as temporary attorney fees in the amount of $2000.

Prior to the scheduled motion for temporary relief, Mulcahey and counsel for Mr. Shirk exchanged outlines for a stipulation for settlement without a contested hearing. Affidavits filed by Mulcahey and the paralegal who assisted him indicate that Ms. Shirk, on many occasions, had expressed her desire to settle the case without a contested hearing. On July 21, 1994, the two attorneys and their clients held another settlement conference where the parties reached agreement. Mulcahey drafted a stipulation, and it was approved by Judge Harold Krieger and incorporated into the judgment and decree. On August 30, 1994, the judgment and decree of divorce was filed and the dissolution was complete.[1]

In November 1994, Mr. Shirk sent a box of personal correspondence to Ms. Shirk containing an earnings statement regarding Mr. Shirk's account with his stockbroker, Smith, Barney, Shearson. According to the statement, Mr. Shirk owned stock in Franchise Financial Corp., valued at $29,934, that had not been previously revealed in his asset disclosures. Ms. Shirk filed a motion on December 7, 1994, seeking an order vacating certain portions of the property settlement alleging that Mr. Shirk had committed fraud in failing to disclose the Franchise Financial Corp. stock during the dissolution negotiations. Mr. Shirk denied the allegation claiming that the stock had increased in value after the divorce was finalized. Mr. Shirk offered to split the asset with her.

In March 1995, Ms. Shirk retained new counsel, Jill Frieders (Frieders). Frieders filed an amended motion on June 28, 1995 seeking, inter alia, an order vacating the

---

1. Ms. Shirk received a $103,500 IRA with Smith, Barney, Shearson and one-half of the proceeds from the future sale of the parties' home, boat, automobile, household goods, and furniture. She also received all of her retirement and pension accounts. Neither party was awarded spousal maintenance, Mr. Shirk did not "buy out" Ms. Shirk in exchange for her agreement to withdraw her claim for spousal maintenance, and the parties were to pay their own attorney fees.

division of marital assets, vacating the judgment as it related to maintenance, and an order for temporary maintenance in the amount of $2000 per month. Ms. Shirk again claimed fraud on the part of her husband in the concealment of assets and in underreporting his income. She also challenged attorney Mulcahey's handling of her case, claiming that as a result of his pursuit of a sexual relationship with her, she did not question his judgment and allowed him to make all of the decisions for her, confusing his sexual advances with true concern in his handling of the dissolution proceeding. Ms. Shirk also stated in her affidavit that one day after the dissolution was finalized, Mulcahey took her to lunch and told her that if she did not pay her bill in full, he would be in trouble with the IRS. She claimed that Mulcahey was in dire financial straits and had settled her case and failed to pursue maintenance, in order to more expeditiously receive his fee to pay off his debt to the IRS. Ms. Shirk further alleged that during his representation, Mulcahey was on medication relating to his mental health, and that he was attempting to recover from chemical abuse and sexual addiction. Mulcahey generally denied the existence of a sexual relationship in a responsive affidavit, but acknowledged that he was under investigation by the Lawyers Professional Responsibility Board for this alleged conduct.

The district court determined that Mr. Shirk had not committed fraud in the disclosure of his assets or his income, and that Mulcahey had not been negligent in his representation of Ms. Shirk by engaging in informal discovery. It did conclude however, that based on the affidavits submitted, a sexual relationship had taken place between Mulcahey and Ms. Shirk in violation of Minn.R.Prof.Conduct 1.8(k),[2] and that there was sufficient evidence presented to conclude that Mulcahey was motivated to quickly settle the case, at least in part, to attend to his own financial needs. The district court properly noted that violation of a rule of professional conduct does not give rise to a cause of action nor create a presumption that a legal duty has been breached by an attorney. Nonetheless, the court vacated the judgment and decree on the basis that the sexual relationship constituted such a serious violation of trust and the fiduciary duty owed by Mulcahey to Ms. Shirk, his client, that the case must be reopened. It determined that Ms. Shirk was not represented by competent counsel as contemplated by *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.App. 1984).

The court of appeals affirmed, concluding that "the district court was within its discretion in finding incompetency of counsel because of Mulcahey's pursuit of a sexual relationship with [Ms. Shirk] and the improper financial motivations that were found to have compromised his professional obligations to her." *Shirk v. Shirk*, 551 N.W.2d 504, 507 (Minn.App.1996). The court reasoned that incompetence of counsel was justification for setting aside the stipulation, and that "[b]ecause vacating the stipulation necessarily results in vacation of the order for judgment into which it was incorporated, vacating the judgment itself is proper under the express language of Minn.Stat. § 518.145, subd. 2(5)." *Id.* We reverse.

■ We review the district court's decision to vacate a stipulation de novo, as we are neither bound by, nor required to give deference to the trial court's determination of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ The use of stipulations in divorce proceedings has been approved by this court. *John v. John*, 322 N.W.2d 347, 348 (Minn. 1982). Courts favor stipulations in dissolution cases as a means of simplifying and expediting litigation, and to bring resolution to what frequently has become an acrimonious relationship between the parties. *See Anderson v. Anderson*, 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975). Stipulations are therefore accorded the sanctity of binding contracts. *Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971). They cannot be

---

2. Minn.R.Prof.Conduct, 1.8(k) states in part that: A lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the lawyer-client relationship commenced.

"repudiated or withdrawn from one party without the consent of the other, except by leave of the court for cause shown," *Gran v. City of St. Paul*, 274 Minn. 220, 223, 143 N.W.2d 246, 249 (1966) (footnote omitted), but if a stipulation was improvidently made and in equity and good conscience ought not to stand, it may be vacated. *John v. John*, 322 N.W.2d at 348. However, upon entry of a judgment and decree based on a stipulation, different circumstances arise, as the dissolution is now complete and the need for finality becomes of central importance.

This court recognized the extremely undesirable consequences triggered by reopening dissolution proceedings in the absence of fraud or bad faith in *Ryan v. Ryan*, stating:

> [W]here no fraud or bad faith is shown that, if we were to allow a settlement made in open court to be reopened many months later at the whim of either party, it would create uncertainty, chaos, and confusion as to the effect of settlements in future cases. This would be an injustice both to the courts in which settlements were made and to the litigants involved, who depend upon the reliability of such settlements.

292 Minn. at 55, 193 N.W.2d at 298 (quoting *Rogalla v. Rubbelke*, 261 Minn. 381, 383, 112 N.W.2d 581, 582 (1961)).

 The legislature also has recognized the importance of finality in dissolution proceedings by setting forth specific circumstances that must be present to permit a party to be relieved of the terms of a judgment and decree, and the time limitations that must be observed:

> **Subd. 2. Reopening.** On motion and upon terms as are just, the court may relieve a party from a judgment and decree, order, or proceeding under this chapter, * * * and may order a new trial or grant other relief as may be just for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under the rules of civil procedure, rule 59.03;
>
> (3) fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgement and decree or order is void; or
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment and decree or order upon which it is based has been reversed or otherwise vacated, or is no longer equitable that the judgment and decree or order should have prospective application.
>
> The motion must be made within a reasonable time, and for a reason under clause (1), (2), or (3), not more than one year after the judgment and decree, order, or proceeding was entered or taken.

Minn.Stat. § 518.145, subd. 2. Therefore, when a judgment and decree is entered based upon a stipulation, we hold that the stipulation is merged into the judgment and decree and the stipulation cannot thereafter be the target of attack by a party seeking relief from the judgment and decree. The sole relief from the judgment and decree lies in meeting the requirements of Minn.Stat. § 518.145, subd. 2.[3] We conclude that the court of appeals erred when it determined that the stipulation could be vacated because Ms. Shirk was represented by incompetent counsel; at that point relief was available only under Section 518.145, subd. 2, and incompetence of counsel is not among the listed grounds.

Ms. Shirk cites earlier decisions of this court vacating stipulated decrees to address inadequacies and unfairness. *See, e.g., Lindsey v. Lindsey*, 388 N.W.2d 713, 716 (Minn. 1986) (setting aside a dissolution decree based on a sufficient showing of fraud on the court, where wife suffered from incapacitating mental illness); *Maranda v. Maranda*, 449 N.W.2d 158, 166 (Minn.1989) (concluding

---

**3.** That Minn.Stat § 518.145 was carefully crafted by the legislature to provide limited areas of relief to those seeking vacation of judgment and decrees is underscored by the fact that the language of the statute closely parallels Rule 60.02 of the Minnesota Rules of Civil Procedure but, significantly, omits subd. (f), a provision permitting relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment."

that a stipulation was "grossly unfair," making it impossible for the trial court to approve the settlement). In each of the cited cases however, the circumstances met the statutory requirements of section 518.145. That is not the situation here.

Our conclusion is based solely upon the clear statutory requirement that circumstances meeting the requirements of Minnesota Statute section 518.145, subd. 2 must be demonstrated in order to obtain relief from a judgment and decree of dissolution; it is in no way a commentary on the seriousness of the violation of the Minnesota Rules of Professional Conduct the district court found in Mulcahey engaging in a sexual relationship with Ms. Shirk. As reprehensible as it is, Mulcahey's ethical violation does not constitute grounds for reopening the judgment and decree.

Because Ms. Shirk's proof fails to meet the statutory requirements of section 518.145, the judgment and decree should not have been reopened. The decision of the court of appeals is therefore reversed and the matter is remanded to the district court with instructions to reinstate the judgment and decree.

Reversed.