**In re the Marriage of Diane ReNee TOUGHILL, Petitioner, Respondent,**

v.

**John Kenneth TOUGHILL, Appellant.**

**No. C2–99–1485.**

Court of Appeals of Minnesota.

May 9, 2000.

Sarah C. Mardell, Kathleen E. Rusler O'Connor, Mardell Law Office, Apple Valley, for respondent.

Joseph E. Marvin, Alexander M. Dashe, Marvin & Erhart, L.L.C., Anoka, for appellant.

Considered and decided by PETERSON, Presiding Judge, ANDERSON, Judge, and FOLEY*, Judge.

## OPINION

### G. BARRY ANDERSON, Judge

On appeal from marital-dissolution proceedings, appellant challenges the district court's orders (1) denying his motion to vacate the dissolution stipulation; (2)

---

* Retired judge of the Minnesota Court of Appeals, appointed pursuant to Minn. Const. art.

awarding spousal maintenance; (3) limiting his infant son's overnight visitation; and (4) denying his motion to change venue. We affirm the district court's orders denying the motions, limiting visitation and setting the amount and duration of spousal maintenance, and we deny respondent's motion for attorney fees and costs. But, the interests of justice require us to reverse the district court's decision to divest itself of jurisdiction over spousal maintenance.

## FACTS

Respondent Diane ReNee Toughill sought to end her nearly three years of marriage to appellant John Kenneth Toughill and hired an attorney. A few days later, appellant and respondent met at the attorney's office. Appellant was served with a summons and petition for dissolution of marriage, and respondent's attorney discussed a marital termination agreement with the parties. While appellant did not hire his own attorney, he had acted on his own behalf in his first divorce.

Respondent's attorney did not give appellant legal advice. Respondent's attorney did, however, confer with respondent in appellant's presence throughout the meeting. As appellant and respondent agreed to various items, respondent's attorney entered the terms into a document on her computer. After about four hours of negotiation, both appellant and respondent signed that document—the marital termination agreement (MTA). Appellant also executed a waiver of independent counsel.

Two days later, appellant had misgivings about the MTA terms and retained independent legal counsel. Thereafter, appellant promptly moved to change venue from Dakota County to Washington County and filed a notice to rescind the MTA. The district court found that respondent resid-

VI, § 10.

ed with her parents in Dakota County and denied the motion to change venue.

The district court ordered appellant to file a formal motion to vacate the MTA, and he complied. The district court held a hearing on the motion, but found no mistake, duress, or fraud in the four hours of detailed negotiation and denied relief. The case immediately proceeded to a default hearing. Accepting some MTA provisions in their entirety, the district court reserved judgment on the issues of attorney's fees, spousal maintenance, the amount of any insurance payments, and overnight visitation pending a separate evidentiary hearing.

At the evidentiary hearing, respondent established that she is employed as part-time medical transcriptionist for a small clinic, working at home between six and fifty hours per month at $12.56 per hour. Appellant works for a railroad and earns a little less than $50,000 per year. Appellant moved into his mother's home during the marriage dissolution, so the district court rejected his claimed rent and utility expenses, and discounted his claimed monthly food expenses. The MTA provided that appellant would pay respondent up to $600 of spousal maintenance per month for 61 months. The district court awarded respondent monthly maintenance of $500 for 52 months.

The MTA provided that the couple's son would not visit appellant overnight before the age of three. In accordance with a Minnesota Supreme Court Task Force recommendation, the district court ordered that overnight visitation would begin when the child reached age two and a half.

## ISSUES

I. Did the district court err by denying appellant's motion to vacate the MTA?

II. Did the district court abuse its discretion by ordering spousal maintenance?

III. Did the district court abuse its discretion by limiting overnight visitation?

IV. Did the district court abuse its discretion by denying appellant's motion to change venue?

V. Is respondent entitled to attorney fees?

## ANALYSIS

### I.

Appellant argues that the district court abused its discretion both by requiring him to bring a motion to vacate the MTA and by denying that motion.

*A. Necessity of Motion*

Appellant asserts that he had a right to unilaterally withdraw from the MTA because a dissolution stipulation does not become a binding contract until incorporated into the judgment. Appellant is incorrect. Stipulations are a judicially-favored means of simplifying and expediting dissolution litigation and, for this reason, are "accorded the sanctity of binding contracts." *Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn.1997). As "binding contracts," a party cannot repudiate or withdraw from a stipulation without the consent of the other party, except "by leave of the court for cause shown." *Id.* at 521–22 (quotation omitted). Thus, even though the district court had yet to adopt the parties' stipulation or incorporate it into a dissolution judgment, appellant could not repudiate or withdraw from the stipulation absent respondent's consent or the court's permission. Here, because respondent did not consent to appellant's attempt to withdraw from or repudiate the stipulation, the court's permission, and hence a motion, was required.[1]

1. The district court is a third party to dissolution proceedings and has the authority to refuse to accept the terms of a stipulation "in part or *in toto." Karon v. Karon,* 435 N.W.2d 501, 503 (Minn.1989); *see Schreck v. Schreck,* 445 N.W.2d 861, 863 (Minn.App.

## B. Denial of Motion

▮ Appellant argues that even if an MTA not yet adopted by a district court is provisionally binding on the parties, this district court should have granted this motion to vacate this MTA because this MTA was void for fraud and duress. Appellant also alleges that as a result of the district court's erroneous refusal to grant his motion, he suffered and will suffer substantial prejudice under the terms of the stipulation-based dissolution judgment. Because appellant alleged both district court error and prejudice caused by that error, we will address the merits of his argument. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.,* 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (to prevail on appeal, appellant must show both error and that error caused prejudice); Minn. R. Civ. P. 61 (harmless error is ignored). We will not disturb a district court's determination whether to vacate a dissolution stipulation absent an abuse of discretion. *See Anderson v. Anderson,* 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975).

▮ In dicta, *Shirk* suggested that a district court may relieve a party from the terms of a dissolution stipulation if, before entry of a judgment based thereon, it is determined that the stipulation was "improvidently made and in equity and good conscience ought not to stand." 561 N.W.2d at 522; (citing *John v. John,* 322 N.W.2d 347, 348 (Minn.1982)). We adopt that dicta as our holding: When a district court is considering whether to allow a party to repudiate or withdraw from a dissolution stipulation which has not yet been incorporated into a dissolution judgment, the district court is to consider whether the stipulation was "improvidently made and in equity and good conscience ought not to stand." *Shirk,* 561 N.W.2d at 522; *see In re Estate of Bush,* 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) (stating that supreme court dicta is entitled to "considerable weight" if it contains "an expression of the opinion of the court"). Stipulations based on fraud or duress and which prejudice the defrauded or coerced party are improvidently made and in equity and good conscience ought not to stand. *Cf. Hestekin v. Hestekin,* 587 N.W.2d 308, 310 (Minn.App.1998) (noting, historically, a party could be relieved of dissolution judgment for fraud, duress, or mistake); *Tomscak v. Tomscak,* 352 N.W.2d 464, 466 (1984) (stating that district courts may set aside stipulation-based dissolution judgments for fraud, duress, or mistake).

Here, in addressing whether this case involved fraud or duress, the district court, among other things, considered the so-called *Tomscak* analysis and specifically addressed the first two so-called *Tomscak* factors. Before *Shirk,* when deciding whether to grant a party's motion to vacate a stipulation-based dissolution judgment, the district court evaluated the *Tomscak* factors of whether (1) the party was represented by competent counsel; (2) negotiations were extensive and detailed; (3) the party agreed to the stipulation in open court; and (4) when questioned by the judge, the party acknowledged understanding the terms and considering them fair and equitable. *See, e.g., Glorvigen v. Glorvigen,* 438 N.W.2d 692, 695–96 (Minn. App.1989). In 1988, Minn.Stat. § 518.145 was amended to include what is now subdi-

1989), *review denied* (Minn. Nov. 15, 1989). Therefore, while a party, absent consent of the other party or permission of the court, may not withdraw from or repudiate a stipulation after entering it (even if the district court has yet to approve the stipulation), the district court is not bound by a stipulation merely because the parties have entered it. We note that while a district court may reject all or part of a stipulation, generally, it cannot, by judicial fiat, impose conditions on the parties to which they did not stipulate and thereby deprive the parties of their "day in court." Alternatively stated, while parties to a dissolution stipulation are precluded from disavowing that stipulation before the district court decides whether to accept the stipulation, to the extent that the district court does not accept the stipulation, the parties should not, absent unusual circumstances, be precluded from litigating their claims.

vision 2 of that statute, regarding relief from dissolution judgments, orders, or proceedings. 1988 Minn. Laws ch. 668, § 11. Among other things, *Shirk* essentially recognized that the 1988 amendment functionally overruled *Tomscak* and its progeny to the extent that those cases allowed vacation of stipulation-based dissolution judgments on grounds other than those listed in the statute. *See Shirk*, 561 N.W.2d at 522 (stating that once judgment is entered based on stipulation, "sole" relief from judgment requires meeting requirements of Minn.Stat. § 518.145, subd. 2).

■ Here, the district court's critical findings, including those addressing the first two *Tomscak* factors, state that (1) the parties agreed to enter into the MTA to save money; (2) before executing the MTA, the parties extensively negotiated visitation, physical custody, access to the child's health and school records, and apportionment of assets, debts, and pensions; (3) appellant was not unfamiliar with MTAs, having entered into an MTA in the dissolution of a prior marriage; (4) appellant signed the waiver of counsel after negotiations and simultaneously with the MTA; and (5) the circumstances of the negotiations did not create any fraud, duress, or mistake.

These findings are not clearly erroneous. *See* Minn. R. Civ. P. 52.01 (findings of fact not set aside unless clearly erroneous). The record shows (a) appellant participated in nearly four hours of negotiation before signing the MTA; (b) appellant conceded there was bargaining and revision of the MTA during the negotiations; and (c) although appellant was pro se during the negotiations, he had represented himself in the dissolution of a prior marriage and was in a position to appreciate the risks associated with representing himself in this proceeding. *Cf. Glorvigen*, 438 N.W.2d at 696 (discussing why, for public

policy reasons, a party who understands the risks of proceeding pro se and voluntarily waives counsel is not deprived of competent counsel). At the motion hearing, appellant rejected the entire agreement, essentially alleging he was somewhat intimidated by respondent's attorney and claiming he relied on what the attorney told respondent. But, there is nothing inherently coercive or fraudulent about knowingly choosing to proceed without counsel and, as a result, being somewhat intimidated by being forced to deal directly with another party's attorney.

Because the district court's findings are not clearly erroneous and because those findings indicate that the stipulation was not improvidently made and that equity and good conscience do not require that it be repudiated or withdrawn, we cannot say that the district court abused its discretion by denying appellant's motion. Moreover, because any *Shirk*-related limitation of *Tomscak* goes to *Tomscak*'s viability in a situation where a judgment has been entered on a stipulation, and because no judgment had been entered here, the district court did not err by considering the first two *Tomscak* factors in deciding whether to grant appellant's motion.[2]

## II.

■ Appellant disputes the spousal maintenance award. We review a district court's spousal maintenance award for abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Minnesota Statute section 518.552 (1998) lists nonexclusive factors to be considered in determining the amount and duration of maintenance; those factors basically balance the recipient's need against the obligor's financial condition. *Erlandson*, 318 N.W.2d at 39–40.

**2.** Obviously, the third and fourth *Tomscak* factors, which deal with approval of the stipulation in open court and the response by parties to questioning by a judge, do not apply

in those cases, like the present one, where the relief sought is rejection of a stipulation not yet incorporated into judgment.

■ The district court assessed respondent's ability to earn money as a medical transcriptionist working at home and awarded respondent $500 monthly maintenance for 52 months after considering testimony on (1) the feasibility of day-care; (2) the parties' intent to have respondent stay at home with their son until he reaches school age; (3) the volume of transcription work available to respondent; (4) her expenses; and (5) appellant's income and expenses. Appellant argues that respondent is voluntarily withholding herself from the job market by electing to work at home. Appellant further contends that the district court should not have discounted his claimed expenses for rent, utilities, and food just because appellant now temporarily lives with his mother. We disagree.

There is no evidence that respondent intended to reduce her income for the purpose of obtaining maintenance. Rather, she continues in the same job that she held before the dissolution because it allows her to earn money while caring for the parties' young son at home. *Cf. Carrick v. Carrick*, 560 N.W.2d 407, 411 (Minn.App.1997) (recognizing that continuing to care for children at home does not amount to bad-faith underemployment). The district court also explained that it could not consider appellant's anticipated rent, utility, and food expenses because it had no evidence about what those expenses would be if, in the future, appellant chose to move out of his mother's home. On this record, these determinations fall within the district court's broad discretion.

■ But we find that the district court abused its discretion by divesting itself of jurisdiction over modification of spousal maintenance. The court's divestiture prevents the parties from seeking modification of maintenance even if their circumstances materially change. *See Karon*, 435 N.W.2d at 503. Because the district court did not impute basic housing expenses to appellant, the jurisdictional divestiture has the practical effect of requiring appellant to pay maintenance as if he had artificially low food expenses as well as no expenses for rent or utilities, even if he moves out of his mother's home.

When the parties dissolved their marriage, each resided with family. The district court's divestiture of jurisdiction prevents each from seeking modification of the spousal maintenance award if they establish their own residences. We find these circumstances warrant continuing jurisdiction over maintenance and accordingly reverse the district court's order insofar as it divests the district court of jurisdiction over modification of the spousal maintenance award. *See* Minn. R. Civ. App. P. 103.04 (allowing appellate court to address any issue as justice requires).

### III.

■ Appellant and respondent have joint legal custody of their son, but respondent has physical custody subject to visitation. Appellant challenges the district court's limitations on his son's overnight visitation.

■ The district court has broad discretion to determine what is in the best interests of the child in the area of visitation and we will not overturn its determination absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). Here, the district court ordered overnight visitation beginning when the child reached age two and a half. Because the court-ordered visitation begins six months before the date agreed to by the parties, the prejudice to appellant is minimal. Also, the district court made its visitation decision by consulting *A Parental Guide to Making Child–Focused Visitation Decisions*, a publication created by the Minnesota Supreme Court Task Force to assist parents and judges in establishing age-appropriate visitation schedules. Appellant has not shown that the district court abused its discretion by following the guidelines recommended by the supreme court's visitation task force.

## IV.

■ Appellant argues that the district court should have granted his motion to change venue. Appellant claims that respondent did not reside in Dakota County on the date proceedings commenced. We review a district court's denial of a motion for a change of venue in a family law case under an abuse-of-discretion standard. *See County of Nicollet v. Haakenson*, 497 N.W.2d 611, 614 (Minn.App.1993). Residence has been defined as "an abode, dwelling, habitation or place where one actually lives." *Buckheim v. Buckheim*, 231 Minn. 333, 337, 43 N.W.2d 113, 115 (1950). Venue in family law cases is proper in the county where either spouse resides. Minn.Stat. § 518.09 (1998).

Respondent moved to her parents' home in Dakota County before the dissolution proceedings commenced and continued to live there throughout the proceedings, but may have returned to the marital home in Washington County for a night or two. The evidence supports the district court's findings on respondent's residence. The district court's decision to deny appellant's motion to change venue was not an abuse of discretion.

## V.

■ Finally, respondent moves for bad-faith attorney fees and costs. Minn. Stat. § 549.211 (1998) allows this court, in its discretion, to award reasonable attorney fees when a party acts in bad faith by asserting frivolous or unfounded claims solely to harass or to delay proceedings. *See Allstate Ins. Co. v. Allen*, 590 N.W.2d 820, 823 (Minn.App.1999) (stating that whether to award attorney fees on appeal under Minn.Stat. § 549.211 is discretionary with the appellate court). Respondent is commendably precise in pointing out errors and incorrect statements in appellant's brief, but these misstatements by counsel do not rise to the level of conduct that should be sanctioned by this court. Accordingly, we deny respondent's motion for attorney fees and costs.

## DECISION

We affirm the district court's orders on the dissolution stipulation, venue, visitation, and the amount and duration of spousal maintenance, and we deny respondent's motion for attorney fees and costs. But the interests of justice compel reversal of the district court's order insofar as it divests the district court of jurisdiction over modification of the maintenance award.

**Affirmed in part and reversed in part; motion denied.**