*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0907**

In re the Marriage of:
John Thomas Andrusko, petitioner,
Respondent,

vs.

Genevieve Ann Andrusko,
Appellant.

**Filed June 15, 2015
Affirmed
Smith, Judge**

Dakota County District Court
File No. 19AV-FA-12-1430

Merlyn L. Meinerts, Meinerts Law Office, P.A., Burnsville, Minnesota (for respondent)

Genevieve Ann Andrusko (pro se appellant)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's amended judgment and decree because, while the original stipulation and decree were intended to be final, the parties later agreed to let the district court decide additional issues in the amended judgment and decree and the district court's resolution of those issues is, on this record, not an abuse of discretion.

# FACTS

Respondent-husband John Thomas Andrusko petitioned to dissolve his 20-year marriage to appellant-wife Genevieve Ann Andrusko. On the first day of trial on October 10, 2013, the parties indicated to the district court that they had reached a resolution. Before entering the agreement on the record, the district court stated:

> So the attorneys know this already, but for the parties, settlement is happening right now. At the end of this record as to what your agreement is, the attorneys are going to ask you questions to make sure this is your agreement, that you made the agreement freely, voluntarily, and that you know you are going to be bound by it. There is a document that has to be submitted to the [c]ourt consistent with this record, and then I have a final continuance order saying it has to be in by such and such time. Okay. Between now and then, if you thought about something or you forgot about something, that is a new and separate issue. It's not something that can cause the agreement to be broken. Okay? So listen to what the record is. Understand that the settlement is happening right now. If I make a finding that the matter is settled, which is usually what happens, then you are bound by the agreement even if the document has to take two weeks to be prepared. Okay. That document would be consistent with this record. All right? Understand? Understand? Okay. Very good. Thank you.

Following the reading of the agreement on the record, both parties provided brief testimony. Appellant agreed that she entered the agreement of her own free will and that the agreement was just, fair, and equitable. Following this testimony, the district court stated:

> The [c]ourt is making a finding that the parties appreciate [and understand that] their agreement here is binding on them at this point. They have agreed to cooperate with each other

2

> through their attorneys to get the final documents in to the court. . . . I am making a finding [that] the parties understand the risks associated with trial. Certainly, that's pressure, but given that, they have done their best to reach an agreement. It's further the [c]ourt's finding [that] the agreement is not perfect, [but] that it seems to be fair and equitable given all the circumstances and all the issues the parties have dealt with. They have done a very good job, through well prepared and knowledgeable attorneys, to help them through a very difficult process, so I am making a finding that the parties are now dissolved of this marriage.

The district court ordered the parties to submit a written agreement by November 1, 2013, or to appear at a hearing on November 15, 2013.

Because they failed to submit a written agreement by November 1, the parties appeared for the November 15 hearing. Appellant testified that she disputed respondent's gross annual income and that she was dissatisfied with the amount of information she had received. She believed that respondent had hidden his correct income and assets from her. Appellant also testified that several items were not addressed in the draft agreement, including certain bills and her status as beneficiary of respondent's life insurance policy.

Following both parties' testimonies, the district court signed the stipulated findings of fact, conclusions of law, and order for judgment. It reiterated that the agreement was not perfect, but that both parties understood the agreement on October 10, 2013 and that they were bound by it. The district court also remarked that appellant was a difficult litigant who would not have been satisfied with any agreement. The district court filed its findings of fact, conclusions of law, order for judgment, and judgment and decree, and judgment was entered.

Appellant moved to amend the judgment and decree under Minn. R. Civ. P. 52, for a new trial under Minn. R. Civ. P. 59, and to reopen and vacate the stipulation under Minn. Stat. § 518.145, subd. 2 (2012). At some point, the parties agreed to amend the stipulated judgment and decree to address some of appellant's concerns. On March 28, 2014, the district court filed the parties' partial amended stipulated findings of fact, conclusions of law, order for judgment, and judgment and decree. This partial amended decree left open five items for the district court's consideration: (1) the adequacy of the parties' disclosures; (2) the homestead-refinance requirements; (3) the amount of the retirement equalizer; (4) the need for respondent to maintain life insurance to secure his spousal maintenance; and (5) the parties' respective income-tax liabilities. On April 2, 2014, the district court filed an amended findings of fact, conclusions of law, order for judgment, and judgment and decree which resolved those five remaining issues.

## D E C I S I O N

### I.

Appellant first raises several challenges to the district court's acceptance of the parties' original stipulation and decree. A district court has discretion to accept the terms of a stipulation in whole or in part. *Karon v. Karon*, 435 N.W.2d 501, 503 (Minn. 1989), *superseded in part by statute*, 1989 Minn. Laws ch. 248 § 7 (codified at Minn. Stat. § 518.552, subd. 5), *as recognized in Loo v. Loo*, 520 N.W.2d 740, 746 n.6 (Minn. 1994). When exercising this discretion, the district court "has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all." *Id.*

4

Appellant argues that the district court erred at the October 10, 2013 hearing by failing to question her regarding her understanding of the parties' agreement. As support, appellant cites a case in which this court determined that the district court erred by denying a motion to vacate a dissolution judgment when the other party presented "vague and inadequate proposed findings of fact and conclusions of law" and obtained a default judgment. *See Manore v. Manore*, 408 N.W.2d 883, 888 (Minn. App. 1987). But the present case involves a stipulated judgment, not a default judgment, and stipulations are "accorded the sanctity of binding contracts." *See Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). Because stipulations are binding contracts, there was no reason for the district court to make the factual inquiries and findings that would normally be required. *See* Minn. Stat. §§ 518.552, subd. 1, .58, subd. 1 (2012) (requiring certain findings before a district court issues a maintenance order or divides marital property).

Appellant cites no caselaw to support her argument that the district court must ask both parties to explain their understandings of the agreement before accepting it. Before hearing the oral recitation of the parties' agreement, the district court advised the parties to listen closely because "the settlement is happening right now." Respondent then testified that he understood the terms of the stipulation and agreed to them. And appellant testified that she entered into the agreement of her own free will and that she believed the agreement was just, fair, and equitable, before answering several questions regarding specific provisions in the agreement. Given this record, the district court did not abuse its discretion by accepting the stipulated agreement at the October 10, 2013 hearing without further testimony from appellant.

Appellant also argues that the district court erred by entering a final decree on November 15, 2013 because the parties' oral stipulation was only intended to be a partial resolution of their issues. In the alternative, appellant argues that the district court erred by entering the final decree because there was no meeting of the minds at the time of the oral stipulation.

The district court advised the parties on October 10, 2013 to listen closely to the oral stipulation because "the settlement is happening right now." The district court further explained that, if the parties thought about something new before the district court finalized the written decree or forgot to include something, "that is a new and separate issue" and "not something that can cause the agreement to be broken." Appellant interprets this statement as the district court's acknowledgement that the stipulation was only intended as a partial resolution of the parties' issues. We disagree. The district court emphasized that the oral stipulation was the parties' agreement and that the parties would be bound by that agreement. Moreover, after hearing the stipulation and the parties' testimonies, the district court found that the parties appreciated and understood their agreement and held that the agreement was binding on them. The district court's statements refute appellant's argument that the parties only intended a partial resolution of their issues on October 10, 2013.

Later, the parties agreed to amend the stipulated judgment to include a few modifications to the original stipulated judgment and decree. When drafting the partial amendment of the original judgment and decree, the parties included language that they had "negotiated a partial resolution of issues" prior to trial and that "[t]he parties agree

they made a partial settlement of certain major issues." Appellant argues that this language proves that the parties only intended a partial settlement on October 10, 2013. But again, there is no evidence in the record that the parties believed their agreement was only partial on October 10, 2013. Instead, the record supports the district court's conclusion that the parties agreed to a final resolution on that date. This final resolution provides ample evidence of the parties' meeting of the minds regarding the agreement's essential elements. *See SCI Minn. Funeral Servs. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011) (explaining that contracts require mutual assent, or a meeting of the minds, regarding the contract's essential elements). Because no evidence supports appellant's assertion that she believed the stipulation was partial on October 10, 2013, the district court did not err by entering a final decree on November 15, 2013.

Because stipulations are "accorded the sanctity of binding contracts," one party cannot repudiate or withdraw from a stipulation without the other party's consent or the consent of the district court. *Shirk*, 561 N.W.2d at 521-22. To the extent that appellant attempted to repudiate the October 10, 2013 stipulation at the November 15, 2013 hearing, she was required to bring a motion to that effect. *See Toughill v. Toughill*, 609 N.W.2d 634, 638 (Minn. App. 2000) (explaining that, even though the district court had not yet adopted the parties' stipulation or filed a dissolution judgment, the appellant was required to bring a motion to withdraw from or repudiate the stipulation in the absence of the other party's permission). Because appellant did not bring such a motion, she was bound by the parties' oral stipulation.

7

As evidence that the original stipulation was partial only, appellant points to the omission of certain items from the oral stipulation. For example, she cites the omission of the sufficiency of respondent's financial disclosure and the value of appellant's retirement account. But the oral stipulation provided figures for the parties' incomes and the retirement equalizer. By agreeing to these figures, the parties necessarily agreed to the accuracy of the financial figures and disclosures and the value of appellant's retirement account. Appellant is correct, however, that the original judgment and decree addressed other issues that were not discussed in the oral agreement, including the dates of spousal-maintenance payments and requirements regarding refinancing the homestead.

Because certain issues were not addressed in the oral stipulation, the district court may have erred by adopting the original judgment and decree in the form presented. *See id.* at 638 n.1 ("[W]hile a district court may reject all or part of a stipulation, generally, it cannot, by judicial fiat, impose conditions on the parties to which they did not stipulate and thereby deprive the parties of their 'day in court.'"). However, we conclude that, on this record, appellant cannot show that she was prejudiced because the parties later resolved their remaining issues. *See id.* at 639 (explaining that the appellant must allege and show "both district court error and prejudice caused by that error"). The parties resolved the dispute regarding spousal-maintenance payment dates (among other things) in the partial amended decree and, according to appellant, they resolved certain refinancing issues during appellate mediation. As discussed below, the parties agreed to allow the district court to make final determinations regarding the five remaining issues, which the district court did in its final amended judgment and decree. Because the parties

8

either resolved the outstanding issues or agreed to allow the district court to do so, appellant did not suffer prejudice by the district court's failure to hold a trial on the remaining issues in November 2013.

**II.**

Appellant next raises several challenges to the district court's denial of her post-decree motions.

Appellant suggests that the district court erred by impliedly denying her motion to amend the decree under Minn. R. Civ. P. 52.02 and her motion for a new trial under Minn. R. Civ. P. 59.01. But the district court amended the decree by entering the partial amended decree agreed to by the parties and by resolving the five remaining issues in the final amended decree. And "a motion for a 'new' trial is an anomaly where there has been no trial and the denial of such a motion is not appealable." *Erickson v. Erickson*, 430 N.W.2d 499, 500 n.1 (Minn. App. 1988). When a dissolution judgment and decree is entered based on the parties' stipulation, no trial has occurred and a motion for a new trial is not proper. The district court therefore did not abuse its discretion by impliedly denying appellant's motion for a new trial.

As part of her arguments regarding the district court's failure to grant her motions to amend and for a new trial, appellant argues that the district court erred by failing to apply the *Tomscak* factors. *See Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn. App. 1984), *superseded in part by statute*, 1988 Minn. Laws ch. 668 § 11 (codified at Minn. Stat. § 518.145, subd. 2), *as recognized in Toughill*, 609 N.W.2d at 639-40. But the *Tomscak* factors previously applied to "a party's motion to *vacate* a stipulation-based

dissolution judgment," not a motion to amend or seek a new trial. *See Toughill*, 609 N.W.2d at 639 (emphasis added). Appellant made an alternative motion to vacate the stipulated judgment under Minn. Stat. § 518.145, subd. 2.

When analyzing a party's motion to vacate a "stipulation-based dissolution judgment," the *Tomscak* factors previously required the district court to consider "whether (1) the party was represented by competent counsel; (2) negotiations were extensive and detailed; (3) the party agreed to the stipulation in open court; and (4) when questioned by the judge, the party acknowledged understanding the terms and considering them fair and equitable." *Id.* But, as this court explained in *Toughill*, the amendment of Minn. Stat. § 518.145, subd. 2 in 1988 "functionally overruled *Tomscak* and its progeny to the extent that those cases allowed vacation of stipulation-based dissolution judgments on grounds other than those listed in the statute." *Id.* at 640.

> [W]hen a judgment and decree is entered based upon a stipulation, we hold that the stipulation is merged into the judgment and decree and the stipulation cannot thereafter be the target of attack by a party seeking relief from the judgment and decree. The sole relief from the judgment and decree lies in meeting the requirements of Minn. Stat. § 518.145, subd. 2.

*Shirk*, 561 N.W.2d at 522.

Despite the clear language in *Toughill* and *Shirk*, appellant cites *Toughill* to support her argument that the *Tomscak* factors still apply to her attempt to seek relief from the stipulated judgment. In *Toughill*, this court concluded that the district court did not err by considering two *Tomscak* factors because judgment had not yet been entered on the stipulation. 609 N.W.2d at 640. But here, the district court entered a judgment

and decree based on the parties' stipulation, and *Toughill* is not on point. Because the district court entered a judgment and decree based on the parties' stipulation, appellant is incorrect that section 518.145, subdivision 2 "is not the exclusive remedy to vacate a judgment and decree or set aside a stipulation." In fact, section 518.145, subdivision 2 provides appellant's "sole relief."[1]  *See Shirk*, 561 N.W.2d at 522. The district court did not err by failing to apply the *Tomscak* factors to appellant's motion to vacate the stipulated judgment under Minn. Stat. § 518.145, subd. 2.

Under Minn. Stat. § 518.145, subd. 2, the district court may reopen a judgment and decree for:

> (1)  mistake, inadvertence, surprise, or excusable neglect;
> (2)  newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under the Rules of Civil Procedure, rule 59.03;
> (3)  fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party;
> (4)  the judgment and decree or order is void; or
> (5)  the judgment has been satisfied, released, or discharged, or a prior judgment and decree or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment and decree or order should have prospective application.

We review the district court's decision whether to reopen a dissolution judgment under section 518.145, subdivision 2 for an abuse of discretion. *See Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996).

---

[1] Contrary to appellant's assertion, the fact that section 518.145, subdivision 2 provides her exclusive remedy to *vacate* the stipulated decree does not "foreclose" her right to move for amended findings under Minn. R. Civ. P. 52.02 or for a new trial under Minn. R. Civ. P. 59.01 (although her new-trial motion was improper because there was no trial).

11

Appellant focuses solely on the *Tomscak* factors in her brief and attacks the validity of the parties' stipulation. She does not discuss which reason in section 518.145, subdivision 2 supports reopening the dissolution judgment. Similarly, in her memorandum to the district court regarding her alternative motions, appellant suggested that the appropriate remedy was under rules 52 and 59 and did not provide analysis regarding section 518.145, subdivision 2. Because appellant failed to brief an argument under section 518.145, subdivision 2 both here and before the district court, we decline to consider whether the statute authorizes reopening the parties' decree. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (explaining that we only consider issues on appeal that were presented to and considered by the district court); *Melina v. Chapman*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

**III.**

Finally, appellant argues that the district court erred by deciding the five issues left open in the partial amended judgment and decree without holding a trial on those issues. We conclude based on the record that the parties asked the district court to decide the five remaining issues based on the evidence and arguments in the record. Appellant cites no caselaw suggesting that she is "absolutely entitled to a trial on the outstanding issues" even though she stipulated to the district court's determination of the issues without a trial. *See Toughill*, 609 N.W.2d at 638 (explaining that parties are bound by their stipulations).

"Appellate [courts] set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness

12

credibility. Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotations and citations omitted). "When determining whether findings are clearly erroneous, the appellate court views the record in the light most favorable to the [district] court's findings." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

Regarding respondent's financial disclosures, appellant cites no caselaw supporting her allegation that respondent had "the burden of proof to show full financial disclosure." After appellant challenged the financial disclosure at the November 15, 2013 hearing, the district court asked respondent if he understood appellant's "criticism" and if he understood that he risked "being in contempt of court, committing perjury, and . . . going to jail or prison" if he hid any assets from appellant. Respondent responded that he understood. He then testified that he had made a full financial disclosure. Given the record, the district court's finding that there was "sufficient disclosure between the parties" is not clearly erroneous. *See Goldman*, 748 N.W.2d at 284.

Regarding the retirement equalizer, the record similarly supports the district court's finding that the "appropriate amount" was $268,533. Both parties presented account information to the district court and appellant specifically agreed to the $268,533 figure in the October 10, 2013 oral stipulation. The record does not show that the district court's finding was clearly erroneous.

13

Even though the record evidence regarding the remaining issues is more limited, both parties presented evidence and arguments to the district court and the record does not show that the district court's findings were clearly erroneous. Because the parties agreed that the district court would decide the five remaining issues based on the limited evidence and arguments in the record, the district court did not abuse its discretion in doing so and its conclusions were not clearly erroneous.

**Affirmed.**