*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0637**

Carleen Kaye Theno,
n/k/a Carleen Kaye Starkovich, petitioner,
Respondent,

vs.

John Marvin Theno,
Appellant.

**Filed February 1, 2016
Affirmed
Connolly, Judge**

St. Louis County District Court
File No. 69-F5-93-101382

Jill I. Frieders, O'Brien & Wolf, L.L.P., Rochester, Minnesota (for respondent)

Linda S.S. de Beer, de Beer & Associates, P.A., Lake Elmo, Minnesota (for appellant)


Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

The district court denied appellant's motion to modify the monthly payment to respondent. Appellant contends the district court erred by construing his motion as an attempt to reopen the judgment and decree rather than as an attempt to implement or clarify the judgment and decree. We conclude the district court correctly construed and denied appellant's motion. Therefore, we affirm.

## FACTS

John Marvin Theno (Theno) and Carleen Kaye Theno, now Carleen Kaye Starkovich (Starkovich) were married in May 1982. Their marriage was dissolved in October 1994. The dissolution was formalized in a judgment and decree, which was based upon a stipulated agreement negotiated by the parties. The judgment and decree included a provision addressing distribution of Theno's retirement benefits, which Theno earned working at U.S. Steel from 1975 to 1982 and from 1989 until he retired in March 2010.

The provision of the judgment and decree addressing Theno's retirement benefits provided:

> The Court shall enter a separate Qualified Domestic Relations Order which shall provide that [Starkovich] shall receive a portion of each monthly or other benefit paid to [Theno] under the [retirement] plan payable as, if and when received by [Theno]. [Starkovich's] share of each monthly or other benefit shall be determined by multiplying the monthly or other benefit by one-half times a fraction the numerator of which shall be the number of months that [Theno] accumulated benefits in [the retirement] plan while married to [Starkovich] and the denominator of which shall be the total number of months that

> [Theno] accumulates benefits in the plan prior to their being paid.

This payment formula is commonly referred to as the *Janssen* formula. *See Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn. 1983) (describing pension division formula). The retirement provision of the judgment and decree was drawn, verbatim, from the stipulated agreement of the parties.

In March 2010, Theno retired from U.S. Steel. In July 2010, he began collecting retirement benefits. In January 2011, the district court issued the Qualified Domestic Relations Order (QDRO) provided for in the judgment and decree, which required Theno's pension administrator to pay Starkovich a portion of Theno's benefits. The payment formula from the judgment and decree was included in the QDRO. Theno reviewed and signed the QDRO as part of the district court's review and approval process. Theno did not challenge the QDRO at the time it was prepared and issued, even though he knew his monthly retirement benefit payment and could have figured out how the QDRO would apply to the payment.

In May 2014, more than three years after the QDRO was issued, Theno brought a motion to amend the QDRO. He requested that the district court reduce his monthly payment to Starkovich from $381.91 to $98.43 and order Starkovich to reimburse him for excessive payments already made. His calculation was based on the report of an actuary he enlisted to determine the benefits attributable to the marriage. Theno argued that the reduction was appropriate because of his personal post-dissolution efforts to enhance the value of his pension and institutional changes to the pension plan that increased the value

of the pension after dissolution. During the district court's hearing on Theno's motion, Theno's attorney noted that Theno was "not asking that the formulaic amount" from the judgment and decree "be changed." Rather, his attorney noted that Theno wanted the formula to be "accurately applied to the benefit as determined by what occurred in the marriage." In September 2014, the district court denied Theno's motion. The district court construed Theno's motion as an attempt to reopen the judgment and decree and determined that Theno did not meet the statutory requirements necessary to do so.

In October 2014, Theno brought a motion for amended findings. Theno argued that the district court erred by determining that he sought to reopen and amend the judgment and decree. Rather, he argued that he was seeking a new order to implement the terms of the judgment and decree, which he claimed did not contemplate inclusion of retirement benefits accrued after dissolution. Theno requested that the district court reverse its order and award Theno the relief requested in his initial motion. In February 2015, the district court denied Theno's motion. Theno appeals.

**D E C I S I O N**

**I. Reopening or implementing and clarifying the judgment and decree**

The district court construed Theno's motion as an attempt to *reopen* the judgment and decree. Theno contends that the district court erred by construing his motion in this way. Theno argues that his motion should be construed as an attempt to *implement or clarify* the QDRO. Resolution of this portion of the case requires us to navigate between these alternative standards.

4

"Subject to the right of appeal, a dissolution judgment and decree is final when entered, unless in a timely motion a party establishes a statutory basis for reopening the judgment and decree." *Thompson v. Thompson*, 739 N.W.2d 424, 428 (Minn. App. 2007); *see also* Minn. Stat. § 518A.39, subd. 2(f) (2014). The statutory bases for reopening of a judgment and decree are enumerated in Minn. Stat. § 518.145, subd. 2 (Supp. 2015). These bases provide the "sole relief from the judgment and decree." *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). A district court's decision not to reopen a judgment and decree is subject to an abuse of discretion standard of review. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996).

"While a district court may not modify a final property division," such as the division of pension benefits in a judgment and decree, "it may issue orders to implement, enforce, or clarify the provisions of a decree, so long as it does not change the parties' substantive rights." *Nelson v. Nelson*, 806 N.W.2d 870, 871 (Minn. App. 2011) (quotation omitted). "An order implementing or enforcing a dissolution decree does not affect the parties' substantive rights when it does not increase or decrease the original division of marital property." *Id.* A district court's order implementing, enforcing, or clarifying the terms of a judgment and decree is subject to an abuse of discretion standard of review. *Id.*

As between these two standards, we conclude that the district court correctly construed Theno's motion as an attempt to reopen the judgment and decree. A stipulated judgment and decree is a binding contract. *Shirk*, 561 N.W.2d at 521-22. The language in a stipulated judgment and decree is generally construed according to its plain meaning. *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (1977). The plain language

5

of the judgment and decree granted Starkovich "a portion of each monthly or other benefit paid to [Theno] under the [retirement] plan." The plain language does not exclude any portion of Theno's retirement benefit. Nor does the plain language provide for recalculation of the benefit at the time of retirement. Instead, the plain language simply states that Starkovich shall receive a monthly payment from the total "monthly or other benefit paid to [Theno]." Thus, a new order addressing the monthly payment would expand upon the plain language of the judgment and decree and change its plain meaning. This constitutes a reopening of the judgment and decree. Accordingly, we conclude that the district court did not err in concluding that Theno was attempting to reopen the district court's prior judgment and decree.

Because we conclude that Theno was attempting to reopen the judgment and decree, we must determine whether doing so was justified. *See* Minn. Stat. § 518.145, subd. 2. Relevant to this appeal is Minn. Stat. § 518.145, subd. 2(5), which provides, "the court may relieve a party from a judgment and decree . . . [if] it is no longer equitable that the judgment and decree or order should have prospective application." A party bringing a motion under this subdivision must do so within "a reasonable time." *Id.* Reopening a judgment and decree under this provision requires "more than merely a new set of circumstances or an unforeseen change of a known circumstance." *Thompson*, 739 N.W.2d at 430-31. We conclude that reopening the judgment and decree was not justified under Minn. Stat. § 518.145, subd. 2(5), for two reasons.

First, we conclude that reopening the judgment and decree was not justified because Theno cannot show that he brought his motion based on something "more than merely a

6

new set of circumstances or an unforeseen change of a known circumstance." Theno understood prospective application of the QDRO at the time he signed it and during the more than three years he acquiesced to payments under the QDRO. In this case, there was nothing *more* than a new set of circumstances or unforeseen change of a known circumstance. Indeed, there was not even a new set of circumstances; Theno knew exactly how the QDRO applied prospectively. Second, we conclude that reopening the judgment and decree was not justified because Theno failed to bring his motion within "a reasonable time." We are aware of no caselaw establishing a firm rule regarding what constitutes a "reasonable time" under Minn. Stat. § 518.145, subd. 2(5). However, on the facts of this case, we note that more than three years was an inappropriate amount of time, especially because Theno acquiesced to payment under the QDRO and allowed an *alleged* $11,055.72 in overpayments to accrue during that time.

In sum, we conclude that the district court did not err by concluding Theno's motion was an attempt to reopen the judgment and decree. Likewise, the district court did not abuse its discretion by refusing to reopen the judgment and decree.

## II. Reserved jurisdiction

Alternatively, Theno contends that the district court erred in refusing to address the QDRO because the district court retained reserved jurisdiction over the matter.

There are two main methods for dividing pension benefits in Minnesota: (1) the present cash value method and (2) the reserved jurisdiction method. *DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn. 1983). Under the present value method, the court awards the non-employee spouse the present value of a pension based upon what the court expects it

7

will be worth in the future. *Id.* Under the reserved jurisdiction method, pension benefits are paid upon the employee spouse's retirement if and when the employee spouse actually receives the benefits. *Id.* The reserved jurisdiction "approach may necessitate the trial court's retention of jurisdiction to oversee the marital property division." *Janssen*, 331 N.W.2d at 756. These two methods are not exclusive; the district court retains broad discretion when dividing pension benefits. *DuBois*, 335 N.W.2d at 507.

Theno argues that the reserved jurisdiction method always allows a court to revisit the distribution of pension benefits upon retirement to accurately allocate the benefits according to the portion attributable to the marriage. Theno relies heavily on a statement from *Petschel v. Petschel*, which provides, "once the pension becomes payable, the pensioner may present evidence showing what part of the post-dissolution salary increases are attributable solely to his own efforts, such as increments resulting from promotions. Those amounts may be excluded from division." 406 N.W.2d 604, 607 (Minn. App. 1987). Theno contends that, under the reserved jurisdiction method and our court's statement in *Petschel*, the district court had the ability and obligation to reassess the division of his pension benefits. We disagree.

In *Petschel* and the other *Petschel*-type cases cited by Theno, distribution of pension benefits was resolved by the district court after litigation, not by stipulation of the parties. *See id.* at 606-07; *see also Kuriger v. Kuriger*, No. CX-00-169, 2000 WL 1280644, at *1 (Minn. App. Sept. 12, 2000); *Arts v. Arts*, No. C6-89-1066, 1989 WL 138942, at *1-2 (Minn. App. Nov. 21, 1989). This is important because the parties in those cases did not have the opportunity to expressly reserve jurisdiction by stipulation. Rather, the parties

8

needed a court to order reassessment of the division of pension benefits at retirement. Unlike the parties in those cases, Theno could have contracted to expressly reserve jurisdiction to reassess the division of pension benefits at retirement by stipulation. His failure to do so must be held against him here, especially considering that he acquiesced to payment of benefits under the QDRO for more than three years before making his *Petschel* argument. Those more than three years of silence suggest that even Theno believed payment under the QDRO was appropriate and that he had not reserved jurisdiction to reassess the division of retirement benefits.

In sum, we conclude that reserved jurisdiction does not apply in this case to allow Theno to modify monthly retirement benefits paid to Starkovich.

**Affirmed.**