In re the Marriage of Kjersti Susanna
HARDING, n/k/a Kjersti Harding
Francis, Petitioner, Appellant,

v.

Thomas Leigh HARDING, Respondent.

No. C3–00–918.

Court of Appeals of Minnesota.

Jan. 23, 2001.

Susan M. Lach, Messerli & Kramer, P.A., Minneapolis, MN, for appellant.

Eric J. Magnuson, Steven B. Schmidt, Gregory P. Wilken, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for respondent.

Considered and decided by CRIPPEN, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

## OPINION

CRIPPEN, Judge

Kjersti Susanna Harding's appeal requires that we address the right of a party to obtain the reopening of a divorce judgment under Minn.Stat. § 518.145, subd. 2(5) (2000), which states that the court may relieve a party from a marriage-dissolution decree where "it is no longer equitable that the judgment and decree or order should have prospective application." The trial court denied appellant's motion to reopen the dissolution judgment and she now asserts that she is entitled to a reopening because a post-judgment, income-tax determination substantially altered the tax consequences anticipated by the parties and, more importantly, the actual value of the principal marital assets that were the subject matter of the marital-termination agreement. We reverse and remand for further proceedings.

## FACTS

The parties were married in 1990 and started a business that was organized as a Subchapter S corporation. Each party received a 50% share of the corporate prof-

its, and appellant wife served as the company's chief financial officer.

In October 1997, appellant petitioned to dissolve the marriage. Shortly thereafter, the parties negotiated a martial-termination agreement, which they signed in January 1998, and on which judgment was entered in April 1998. The judgment awarded appellant $224,000 for her 50% share of the business and provided that the parties would file joint state and federal income tax returns for 1997, sharing equally any resulting refunds or liabilities, which typically amounted to a small refund.[1]

In May 1999, the Internal Revenue Service audited the business, causing the company to change its method of accounting from the cash method to the accrual method. This change resulted in a federal tax liability of $56,229.86 for 1996 and $89,785.03 for 1997, including interest through August 6, 1999, and a state tax liability of $25,000. Because the parties had filed joint income tax returns through 1997, the tax liability on the business for the years 1996 and 1997 became a joint liability.

In December 1999, appellant brought a motion to vacate the marital-termination agreement and reopen the judgment alleging that she entered into the agreement under "severe duress and threat, which misled the Court and render[ed] the settlement unreasonable and unfair." Appellant also sought court permission to conduct discovery regarding the value of the business and to reserve the issue of reopening the judgment pending discovery.

In March 2000, the trial court denied appellant's motion. The court found that the circumstances of the case did not "compel reopening the Decree on the grounds of duress" and stated that there was "no evidence indicating that [husband] committed a fraud on the Court."[2] This appeal followed.

---

1. Before the audit, the parties received tax refunds of $721 for 1996 and $44 for 1997.

2. The trial court did not specifically address the question of whether a post-judgment tax determination had rendered the dissolution

## ISSUE

Did the trial court err by refusing to reopen the divorce judgment on the basis that it is no longer equitable that the judgment have prospective application?

## ANALYSIS

The trial court's decision refusing to reopen a judgment "will not be disturbed absent an abuse of discretion." *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn.1996) (citations omitted). When a divorce judgment is entered pursuant to a stipulation, the stipulation merges into the judgment and decree and "finality becomes of central importance." *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn.1997). "The sole relief from the judgment and

decree lies in meeting the requirements of Minn.Stat. § 518.145, subd. 2 [ (2000) ]." *Id.* Minn.Stat. § 518.145, subd. 2 elaborates slightly on the traditional standards of "mistake, fraud, or duress." *Hestekin v. Hestekin,* 587 N.W.2d 308, 310 (Minn. App.1998) (citation omitted).

Although Minnesota courts have routinely considered the appropriateness of vacating or reopening a divorce decree under clauses (1)-(3) of the statute, no court has needed to address this course of action under clause (5) of the statute.

In 1988, the Minnesota legislature incorporated language from Minn.R.Civ.P. 60.02 [3] to create what is now subdivision 2 of Minn.Stat. § 518.145.[4] As a result, sub-

---

judgment inequitable under Minn.Stat. § 518.145, subd. 2(5) (2000). Although this can be explained by the content of appellant's plea to the trial court, we are satisfied that appellant also raised the question of whether the tax determination had rendered the judgment so inequitable that it should have no further application. Appellant initially presented the matter on the theory that relief should be granted based on duress or that duress constituted fraud on the court. *See* Minn.Stat. § 518.145, subd. 2 (2000) (permitting relief for "other misconduct of an adverse party" or for "fraud upon the court"). The trial court properly determined that no duress or fraud on the court had occurred. But appellant's duress claim further concluded that "the settlement [was] unreasonable and unfair." Moreover, she expressly cited to subdivision 2(5) at the hearing on her motion because she was aware that her initial claim based on duress was time-barred. *See id.* (providing that motions under subdivision 2 must be made within a reasonable time period, except for reasons under clauses (1)-(3), which include mistake, duress, or fraud, that must be brought within a year after entry of the judgment or decree). Finally, appellant fully disclosed to the trial court her concern that a tax determination had rendered mistaken the parties' expectation regarding their income-tax liability and, more importantly, the value of the principal marital assets they had divided by agreement.

3. Minn.R.Civ.P. 60.02 specifies the conditions or situations under which a party may seek relief from a final judgment but specifically excludes marriage-dissolution decrees.

4. Subdivision 2 provides in full:

On motion and upon terms as are just, the court may relieve a party from a judgment and decree, order, or proceeding under this chapter, except for provisions dissolving the bonds of marriage, annulling the marriage, or directing that the parties are legally separated, and may order a new trial or grant other relief as may be just for the following reasons:

1. mistake, inadvertence, surprise, or excusable neglect;

2. newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under the rules of civil procedure, rule 59.03;

3. fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party;

4. the judgment and decree or order is void; or

5. the judgment has been satisfied, released, or discharged, or a prior judgment and decree or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment and decree or order should have prospective application.

The motion must be made within a reasonable time, and for a reason under clause (1), (2), or (3), not more than one year after the judgment and decree, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment and decree or order or suspend its operation. This subdivision does not limit the power of a court to entertain an independent action to relieve a party from a judgment and decree, order, or proceeding or to grant relief to a party

division 2 is virtually identical to rule 60.02 except that it does not contain a provision giving the court the open-ended power to grant relief as justice requires. *See Shirk,* 561 N.W.2d at 522 n. 3 (stating Minn.Stat. § 518.145, subd. 2 "significantly, omits [60.02](f), a provision permitting relief from a final judgment for '[a]ny other reason justifying relief from the operation of the judgment' "). But the statute incorporates clause (e) of the rule, which allows the court to grant relief if "it is no longer equitable that the judgment * * * have prospective application." Minn.Stat. § 518.145, subd. 2(5). Because of the similarities between rule 60.02 and subdivision 2, cases citing to rule 60.02 are often used when addressing the application of the statute. *See, e.g., Peterson v. Eishen,* 512 N.W.2d 338, 341 (Minn.1994) (comparing the rule and statute for purposes of determining whether a motion to vacate was timely), *modified on other grounds by Federal–Hoffman, Inc. v. Fackler,* 549 N.W.2d 93 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996).

In the first Minnesota case to address rule 60.02(e), this court looked to federal case law to determine that the provision applied to a judgment involving an injunction where "a significant change in circumstances ma[de] the continued application of the judgment inequitable and turn[ed] the decree into an instrument of wrong." *Jacobson v. County of Goodhue,* 539 N.W.2d 623, 625 (Minn.App.1995) (quotation and citations omitted), *review denied* (Minn. Jan. 12, 1996). The *Jacobson* court further noted that the provision gave it "broad equitable discretion to modify a judgment in light of changed circumstances." *Id.* (citations omitted). Federal courts have interpreted the clause to apply "only to cases where a judgment which was valid and equitable when rendered is rendered prospectively inequitable by subsequent events." *Federal Deposit Ins.*

*Corp. v. Alker,* 234 F.2d 113, 116 n. 4 (3d Cir.1956) (citations omitted); *see also Zimmerman v. Quinn,* 744 F.2d 81, 83 (10th Cir.1984) (affirming lower court's modification of defendant's tax liability because it "was necessary to accomplish justice").

■ Before us here is the proposition that the divorce judgment should be reopened under Minn.Stat. § 518.145, subd. 2(5), the justification for which is integrated with an argument of mutual mistake. Although appellant largely relies on subdivision 2(5), she uses cases dealing with newly discovered information demonstrating mutual mistake. *See Newman v. Fjelstad,* 271 Minn. 514, 137 N.W.2d 181 (1965) (personal-injury claim); *Spaulding v. Zimmerman,* 263 Minn. 346, 116 N.W.2d 704 (1962) (personal-injury claim).

■ We are mindful that the trial court ordinarily does not have continuing jurisdiction to modify the property division in a divorce judgment due to a change of circumstances. *Graff v. Graff,* 472 N.W.2d 882, 883–84 (Minn.App.1991) ("Except in cases of fraud or mistake, property divisions are final and not subject to modification." (citations omitted)), *review denied* (Minn. Sept. 13, 1991). And mere unforeseen circumstances will not permit a reopening of the judgment. *Hestekin,* 587 N.W.2d at 310. In this case, appellant contends correctly that something more must be at stake and points to precedent where courts have allowed the reopening of a judgment by reason of mutual mistake where the parties did not intend the release to be final as to unknown injuries. *See Newman,* 271 Minn. at 519, 137 N.W.2d at 184 (declining to set aside settlement, but reiterating rule that a release for damages may be set aside on the ground of mutual mistake "where it clearly appears that a substantial injury, not discovered until after the settlement, had in fact been sustained in the accident and existed at the time of settlement" (citing

not actually personally notified as provided in the rules of civil procedure, or to set aside a judgment for fraud upon the court.

Minn.Stat. § 518.145, subd. 2.

**924**

*Richardson v. Chicago, Milwaukee & St. Paul Ry. Co.,* 157 Minn. 474, 196 N.W. 643 (1924))).

After scrutinizing the nature of the issue in this case, it is evident that appellant has presented a change in circumstances that is not merely a new set of circumstances or an unforeseen change of a known circumstance. Appellant maintains that the value of the corporate business was different from what it was believed to be when the parties entered into the stipulation. The considerations here concern not just the circumstances of the tax change after the judgment was entered, but rather a tax determination that seriously contradicts what the parties knew about the property when the judgment was made.

■ Clause (5) is not a catchall provision. But due caution in its application nevertheless leaves us with the conviction that the rule must be employed when injustice in the prospective application of a divorce decree is due to the development of circumstances substantially altering the information on a topic that was accepted earlier, when the subject was addressed in a marital-termination agreement and in an ensuing judgment.

### DECISION

We reverse and remand to permit the reopening of the divorce judgment solely to determine a fair and equitable distribution of the corporate stock in Infinity Direct, Inc.

**Reversed and remanded for reopening.**