*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1458**

Thomas Joseph Daley, petitioner,
Respondent,

vs.

Anne Elizabeth Daley,
n/k/a Anne E. Patrick-Daley,
Appellant.

**Filed May 18, 2015
Affirmed in part, reversed in part, and remanded
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-FA-000276366

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Zachary A. Kretchmer, Arnold, Rodman & Kretchmer, PLLC, Minneapolis, Minnesota
(for respondent)

Sean A. Shiff, Sean A. Shiff, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Chutich, Judge; and Toussaint,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Anne E. Patrick-Daley brought a motion to reopen spousal maintenance. The district court dismissed appellant's motion, holding that it lacked "jurisdiction." The district court also denied appellant's request for need-based attorney fees. Because the spousal maintenance at issue here ceased under a 2010 judgment, and it no longer has a prospective effect, the spousal maintenance cannot be reopened under Minn. Stat. § 518.145, subd. 2(5) (2014). We therefore affirm the district court's dismissal of appellant's motion to reopen the 2010 judgment. However, we reverse and remand on the issue of need-based attorney fees for appellant because the district court did not make adequate findings.

## FACTS

Appellant and respondent Thomas Joseph Daley were married in 1988. They separated in 2001 and filed for divorce in 2004. Appellant did not work outside of the home during the marriage, but she did receive a college degree in accounting. Respondent worked at a privately-held securities firm. During the divorce proceeding, appellant testified that she wanted to take a course to prepare for the CPA exam and work as an independent contractor. The district court assumed that appellant would pass the CPA exam in two years. The district court ordered respondent to pay appellant child support and spousal maintenance for two years followed by a de novo review of the maintenance.

Both parties appealed the 2004 judgment, and, in relevant part, this court remanded regarding the district court's determination of spousal maintenance because the district court failed to determine respondent's net income. On remand, a referee issued an amended judgment in 2007. The referee granted appellant permanent spousal support and ordered it retroactive to January 1, 2006. Respondent appealed the amended 2007 judgment to this court.

This court again affirmed in part, reversed in part, and remanded. We held that the findings relating to the maintenance award were clearly erroneous, and that the district court should treat the spousal maintenance as rehabilitative pursuant to the 2003 judgment. We ordered the district court to make findings regarding respondent's 2003 gross and net incomes, examine appellant's rehabilitative efforts, and adjust the maintenance award in light of those efforts and any other relevant circumstances.

A referee ordered a hearing for December 17 and 18, 2009. Appellant did not submit exhibit or witness lists prior to the hearing; she did not offer evidence at the hearing; and she left the hearing because of severe emotional distress. She spent the next five days in the hospital. In July 2010, the referee entered amended findings. The referee found that appellant was intelligent and did not have any vocational deficits, but had failed to follow through with rehabilitative efforts. The referee found that appellant failed to meet her burden to extend spousal maintenance beyond December 31, 2007, and ordered the spousal maintenance terminated on January 1, 2008. The referee also found that respondent had overpaid spousal maintenance. Appellant's stock options from the

3

divorce decree were exercised in 2010 and 2012. Appellant received a net amount of $508,487 in 2010, and $383,549 in 2012.

Appellant filed a motion to reopen the district court's 2010 judgment in March 2014. The district court denied appellant's motion to reopen, holding that it lacked "jurisdiction" because there was no existing maintenance award. In its order, the district court did not address appellant's arguments under Minn. Stat. § 518.145 (2014). The district court also denied appellant's request for attorney fees. This appeal followed.

## D E C I S I O N

## I.

The district court held that it lacked "jurisdiction" to reopen the 2010 judgment because the spousal-maintenance obligation ceased in January 2008. The district court did not address Minn. Stat. § 518.145, subd. 2(5) in its order, but held that it "ha[d] been divested of jurisdiction and does not have the authority to award further maintenance." The district court appears to have conflated the issue of jurisdiction to modify a spousal-maintenance award and a motion to reopen a final judgment. Appellant argues that the district court erred by concluding that it lacked jurisdiction to reopen the judgment and requests remand for the district court to consider section 518.145. Respondent argues that Minn. Stat. § 518.145, subd. 2(5) cannot apply as a matter of law to a spousal-maintenance award that ceased to exist in January 2008 and remand is therefore unnecessary.

4

This court reviews a district court's conclusions of law, constructions of statutes, and application of the law de novo.[1] *In re Barth*, 761 N.W.2d 502, 507-08 (Minn. App. 2009). If a statute is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996). Minnesota law provides that a spousal-maintenance award can be reopened if "it is no longer equitable that the judgment and decree or order should have prospective application." Minn. Stat. § 518.145, subd. 2(5). Respondent correctly argues that Minn. Stat. § 518.145, subd. 2(5) does not apply to appellant's spousal maintenance that ceased in January 2008.

A plain reading of the statute indicates that section 518.145, subdivision 2(5) cannot apply. The statute applies to situations where it is no longer equitable that a judgment has a prospective application. "Prospective" is defined as "[e]ffective or operative in the future." *Black's Law Dictionary* 1342 (9th ed. 2009). The spousal maintenance at issue no longer exists. Something that does not exist cannot be operative or effective in the future; in fact, it has no application at all. *Cf. Moore v. Moore*, 734 N.W.2d 285, 288 (Minn. App. 2007) (stating that "once a final maintenance payment has been made, there is no maintenance obligation to modify"), *review denied* (Minn. Sept. 18, 2007). Of course, the absence of an award affects appellant in that she receives no money, but the past award has no prospective application under the meaning of the statute.

---

[1] Respondent argues that the abuse of discretion standard applies. However, the interpretation of section 518.145 here does not involve any disputed facts and receives a de novo review.

This interpretation of "prospective" is supported by the fact that Minnesota courts have applied Minn. R. Civ. P. 60.02(e) in factually distinguishable cases concerning the reopening of final judgments. Section 518.145, subdivision 2(5) was crafted from Minn. R. Civ. P. 60.02(e).[2] *Shirk v. Shirk*, 561 N.W.2d 519, 522 n.3 (Minn. 1997). Minnesota courts have used cases interpreting Rule 60.02(e) to interpret section 518.145, subdivision 2(5). *Harding v. Harding*, 620 N.W.2d 920, 923 (Minn. App. 2001) ("Because of the similarities between rule 60.02 and subdivision 2, cases citing to rule 60.02 are often used when addressing the application of the statute."), *review denied* (Minn. Apr. 17, 2001).

Rule 60.02(e) "principally applies to a judgment involving an injunction in which a significant change in circumstances makes the continued application of the judgment inequitable." *Jacobson v. Cnty. of Goodhue*, 539 N.W.2d 623, 625 (Minn. App. 1995), *review denied* (Minn. Jan. 12, 1996). In *Jacobson*, the district court enjoined a county from enforcing an ordinance that made it illegal to sell liquor in clubs with nude dancing based on the club's first-amendment rights. *Id*. at 624-25. The supreme court eventually overruled the district court in a separate case and the county moved to reopen the injunction. *Id*. at 625. This court held that the change in constitutional law constituted a "sufficient change in legal circumstances to warrant relief from the injunction." *Id*. at 626. This court permitted a reopening because the injunction had prospective effect—it prevented the county from enforcing a constitutional ordinance. In contrast to *Jacobson*,

---

[2] "The judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Minn. R. Civ. P. 60.02(e).

the final judgment from 2010 no longer has any prospective application. The judgment does not prevent appellant or respondent from taking any action, nor does it require them to take any action. Thus, the facts here are distinguishable from cases where Rule 60.02(e) was used to reopen final judgments.

Appellant argues that *Harding* controls and allows for the judgment to be reopened. However, *Harding* is factually distinguishable. In *Harding*, the parties filed a marital-termination agreement in April 1998. 620 N.W.2d at 921. The agreement provided that the wife would receive $224,000 for a 50% share in a business, and further provided that the parties would jointly file a 1997 income-tax return, with the understanding that the return usually resulted in small refunds. *Id*. Regrettably, the tax return resulted in an unexpectedly large income-tax liability and the wife brought a motion to reopen the judgment. *Id*. This court held that Minn. Stat. § 518.145, subd. 2(5) should apply to reopen the property division because the parties made a mutual mistake regarding the tax liability. *Id*. at 924. In contrast to *Harding*, where the prospective application of an unexpected increase in tax liability was inequitable, respondent complied with the spousal-maintenance award before it ceased in January 2008. The last stock option was exercised in 2012, and there are no remaining parts of the spousal-maintenance award to disburse. The award has no prospective application that would justify reopening it.

Appellant suggests that changed circumstances justify reopening the award. Appellant argues that she is not able to support herself because of severe mental illness and because she is essentially impoverished. She also argues that she was destitute at the

7

time of the 2009 hearing and could not afford a lawyer to properly advocate for her rights. While we are sympathetic to appellant, we are bound by the applicable statute and relevant caselaw. We simply cannot change the outcome of this long, contentious litigation given the finality of the 2010 judgment. Appellant should have appealed the 2010 judgment and made relevant arguments at that time instead of trying to reopen it nearly four years after it was entered. *See Thompson v. Thompson*, 739 N.W.2d 424, 431 (Minn. App. 2007) (denying motion to reopen under section 518.145 because the "[h]usband seeks to collaterally attack the district court's marital-property and spousal-maintenance determinations, having elected to forego participation in the proceedings or to timely file a direct appeal of the judgment and decree").

The district court erred because it did not address appellant's motion to reopen under Minn. Stat. § 518.145, subd. 2(5). Even though the district court erred, we affirm the district court's denial of appellant's motion to reopen the 2010 judgment because Minn. Stat. § 518.145, subd. 2(5) does not apply to spousal maintenance that ceased in January 2008 pursuant to a 2010 judgment. *See Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987) ("[W]e will not reverse a correct decision simply because it is based on incorrect reasons.").

## II.

The district court denied appellant's request for need-based attorney fees under Minn. Stat. § 518.14, subd. 1 (2014), stating that "it does not find that [appellant] does not have the means to pay them." Appellant argues that the district court erred by

denying her fees. In the alternative, appellant argues that this court should remand for more detailed findings regarding her ability to pay.

We review an award of attorney fees for a clear abuse of discretion. *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999). A district court shall award attorney fees in a dissolution proceeding in an amount necessary to enable a party to carry on or contest the proceeding if: (1) the fees are necessary for the good faith assertion of the party's rights in the proceeding, (2) the party from whom fees are sought has the means to pay them, and (3) the party to whom fees are awarded does not have means to pay them. Minn. Stat. § 518.14, subd. 1.

A district court must award need-based attorney fees if the statutory conditions are met. *Holmberg v. Holmberg*, 588 N.W.2d 720, 727 (Minn. 1999). A conclusory finding on the statutory factors does not adequately support a fee award. *See In re Marriage of Richards*, 472 N.W.2d 162, 166 (Minn. App. 1991) (remanding attorney fee issue because court made only "general findings"); *see also Haefele v. Haefele*, 621 N.W.2d 758, 767 (Minn. App. 2001) ("The district court did not make findings sufficient to show what combination of need [supports] the entire award. This precludes effective review."), *review denied* (Minn. Feb. 21, 2001). But a lack of specific findings on the statutory factors for a need-based fee award "is not fatal to an award where review of the order 'reasonably implies' that the district court considered the relevant factors and where the district court 'was familiar with the history of the case' and 'had access to the parties' financial records.'" *Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001) (quoting *Gully v. Gully*, 599 N.W.2d 814, 825-26 (Minn. 1999)).

In *Geske*, this court remanded because the district court did not make specific findings. *Id.* at 819. The district court had information regarding the mother's income, which had increased since the previous order. *Id.* at 817. The increased income suggested "that [the mother] lacks the need that is required for a need-based fee award." *Id.* However, there was conflicting evidence regarding the mother's income that the district court did not consider or discuss in its order. *Id.* at 817-18. This court held that "mother's ability to pay her own attorney fees is unclear and we cannot invoke *Gully* to affirm." *Id.* at 818.

The present case is similar to *Geske*. The district court only made a conclusory holding and a review of the order confirms that the district court did not consider all of the relevant factors. There are four facts indicating that appellant should receive need-based fees: (1) appellant is not working, (2) appellant lost her house to foreclosure, (3) appellant is living in the basement of a friend's home, and (4) appellant stated in an affidavit that she only has $15,000 remaining in her bank account. The district court did not address how these circumstances affected its analysis of appellant's ability to pay attorney fees.

Respondent counters that need-based attorney fees are unnecessary based on past payments to appellant. When appellant's stock options were exercised, she received around $500,000 in 2010 and around $380,000 in 2012. The district court also noted in its findings of fact that appellant received around $1.8 million in spousal maintenance from 2004 to the time of the hearing. Although the district court did not explain its

conclusion, one could assume that it relied on these past payments in denying the need-based attorney fees.

But the fact that appellant received large amounts of money in the past does not necessarily mean that she does not qualify for need-based attorney fees now. Appellant and respondent have four children, and they were accustomed to living a particular life-style at the time of divorce. Appellant had primary custody of the children in Minnesota after the divorce. She likely spent large sums of money on the children. The district court should have explored appellant's financial situation in greater detail before concluding that she did not qualify for need-based attorney fees.

Given the conflicting evidence in the record, appellant's ability to pay her own fees is unclear. The district court erred by failing to make specific findings. *See Richards*, 472 N.W.2d at 166 (remanding where the district court did not make specific findings to support its denial of attorney fees). Because we cannot effectively review the district court's order, we remand only on the issue of attorney fees. The district court may reopen the record to the extent that it is necessary for a full consideration of the matter.

**Affirmed in part, reversed in part, and remanded.**