*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0973**

In re the Marriage of: Amy Christine Olmsted,
f/k/a Amy Christine Zarbok, petitioner,
Appellant,

vs.

William Scott Zarbok,
Respondent.

**Filed February 8, 2016
Affirmed
Johnson, Judge**

Washington County District Court
File No. 82-FA-08-2686

Amy C. Olmsted, Scandia, Minnesota (pro se appellant)

Jeffrey M. Bruzek, St. Paul, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Larkin, Judge; and Harten, Judge.*

## UNPUBLISHED OPINION

**JOHNSON**, Judge

Amy Christine Olmsted is bound by obligations related to real property that was awarded to her former husband, William Scott Zarbok, in their dissolution proceeding

_____

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

approximately seven and a half years ago. She wishes to be free of any encumbrances or obligations related to his property and has brought successive motions before the district court seeking various forms of relief. In her latest motion, she requested that the district court transfer title in the property from Zarbok to her so that she may sell the property and thereby obtain the release of a pending mortgage and the discharge of a related liability on a loan secured by the mortgage. The district court denied the motion on the grounds that the relief sought would be inconsistent with the dissolution decree and that she has other potential remedies. We conclude that the district court did not abuse its discretion in its ruling on Olmsted's motion and, therefore, affirm.

## FACTS

Olmsted and Zarbok were married in September 2005. Their marriage was dissolved in June 2008. The terms of the judgment and decree are based on a marital termination agreement (MTA), which Olmsted and Zarbok executed and filed with the district court.

Among other things, the judgment and decree awarded Zarbok "all right, title, and interest in and to" the parties' former homestead, a rural property in Afton known as Majestic Pines Farm, "free from any claim of [Olmsted] to any interest therein." The judgment and decree also required Zarbok to pay Olmsted $250,000 as a property equalizer. Until the equalizer payment was made, the parties were to continue to own Majestic Pines Farm as joint tenants. After the equalizer payment was made, Olmsted was required to give Zarbok a quit-claim deed with respect to the property, and she did so.

2

At the time of dissolution, there were two outstanding loans secured by mortgages on the property: a loan from Washington Mutual Bank (which later was acquired by JPMorgan Chase) with a balance of approximately $1,500,000, and a loan from Bank Cherokee with a balance of approximately $250,000. The judgment and decree provided that Zarbok "shall be responsible for, indemnify and hold [Olmsted] harmless from all expenses of said homestead, including but not limited to mortgage and loan payments, mechanic's liens, real estate taxes, insurance, and utilities." The judgment and decree further provided that Zarbok "shall attempt to remove [Olmsted's] name from any mortgages associated with the homestead and property, in good faith."

The parties have had numerous disputes concerning the farm since the judgment and decree was entered. Olmsted first sought relief from the district court, with the assistance of counsel, in November 2008 because Zarbok had not made the equalizer payment. The district court ordered him to do so, and he made the payment in February 2009, thereby acquiring a fee interest in the farm. Olmsted sought relief a second time (appearing *pro se* then and thereafter) in June 2009 because Zarbok had not removed her from the mortgage loan with Bank Cherokee and was in default on the mortgage loan, which allowed the bank to obtain a judgment against her of approximately $275,000. The district court ordered Zarbok to remove Olmsted's name from the Bank Cherokee mortgage by January 15, 2010. Olmsted sought relief a third time in January 2010 because Zarbok had not accomplished the removal of Olmsted's name from the Bank Cherokee mortgage by the deadline in the district court's prior order. Olmsted requested that the district court order the sale of the farm or, alternatively, order that the farm be deeded to her. The district court denied the

3

motion on the ground that the relief sought would be an improper modification of the property division in the judgment and decree. Olmsted sought relief a fourth time in August 2013 after Bank Cherokee sought to execute on its judgment against her. She requested that Zarbok be held in contempt of court and that she either be released of all liabilities related to the farm or that Zarbok be required to deed the farm to her. The district court did not grant Olmsted the relief she sought but required Zarbok to defend her against Bank Cherokee's enforcement action or reimburse her for her attorney fees. Olmsted sought relief a fifth time in October 2014 after Bank Cherokee docketed a judgment against her of approximately $318,000. She requested essentially the same relief that she requested in her fourth motion. The district court denied Olmsted the relief she sought but granted her a judgment against Zarbok in the amount of approximately $324,000 to account for Zarbok's obligation to indemnify her for her liability to Bank Cherokee and for her attorney fees.

The district court order at issue in this appeal resolved Olmsted's sixth motion, which she brought in May 2015. Olmsted argued that her ongoing mortgage obligation and Bank Cherokee's judgment against her have had a negative impact on her credit rating, her home insurance rates, and her ability to refinance her own home mortgage. She requested that the district court enforce her judgment against Zarbok and again requested that Zarbok be required to transfer title in the farm to her. At a hearing on the motion, the district court reiterated that it would not disturb the judgment and decree by transferring title in the farm to Olmsted. The district court noted that Olmsted may have the ability to

4

execute on her judgment against Zarbok by foreclosing on the farm or on other property owned by Zarbok. Ultimately, the district court denied the motion. Olmsted appeals.

## D E C I S I O N

Olmsted, appearing *pro se*, argues that the district court erred by denying the motion she filed in May 2015. Her appeal raises two issues.

## A. Implementing, Enforcing, or Clarifying Judgment and Decree

The first issue is whether the district court erred by denying Olmsted's request to award her title in the farm as a means of implementing, enforcing, or clarifying its judgment and decree.

"'While a [district] court may not modify a final property division, it may issue orders to implement, enforce, or clarify the provisions of a decree, so long as it does not change the parties' substantive rights.'" *Nelson v. Nelson*, 806 N.W.2d 870, 871 (Minn. App. 2011) (alteration in original) (quoting *Redmond v. Redmond*, 594 N.W.2d 272, 275 (Minn. App. 1999)). "An order implementing or enforcing a dissolution decree does not affect the parties' substantive rights when it does not increase or decrease the original division of marital property." *Id.* This court applies an abuse-of-discretion standard of review to a district court's ruling on a request to implement, enforce, or clarify the terms of a judgment and decree. *Id.*

In this case, the judgment and decree expressly grants Zarbok title to the farm, "free from any claim of [Olmsted] to any interest therein." Given this language, an order requiring the transfer of the farm to Olmsted would not "implement, enforce, or clarify" the judgment because it would contradict the clear language of the judgment and decree.

5

*See id.* Transferring title from Zarbok to Olmsted would increase Olmsted's property award and decrease Zarbok's property award. *See id.* The relief sought by Olmsted would "affect the parties' substantive rights" and, thus, would not be a proper implementation, enforcement, or clarification of the judgment and decree. *See id.* Accordingly, the district court did not err by declining to grant relief on this basis.

**B.      Reopening Judgment and Decree**

The second issue is whether the district court erred by denying Olmsted's request to reopen and amend the judgment and decree by granting her title to the farm.

"Subject to the right of appeal, a dissolution judgment and decree is final when entered, unless in a timely motion a party establishes a statutory basis for reopening the judgment and decree." *Thompson v. Thompson*, 739 N.W.2d 424, 428 (Minn. App. 2007). The statutory bases for reopening a judgment and decree are enumerated in section 518.145, subdivision 2, of the Minnesota Statutes. Those statutory bases provide the "sole relief from the judgement and decree." *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997).

The only statutory basis for reopening a judgment and decree that is potentially relevant to this appeal provides, "On motion and upon terms as are just, the court may relieve a party from a judgment and decree . . . [if] it is no longer equitable that the judgment and decree or order should have prospective application." Minn. Stat. § 518.145, subd. 2(5) (2014). This provision "is not a catchall provision." *Harding v. Harding*, 620 N.W.2d 920, 924 (Minn. App. 2001), *review denied* (Minn. Apr. 17, 2001). Rather, this provision "must be employed when injustice in the prospective application of a divorce decree is due to the development of circumstances substantially altering the information on

6

a topic that was accepted earlier, when the subject was addressed in a marital-termination agreement and in an ensuing judgment." *Id.* "The moving party must present more than merely a new set of circumstances or an unforeseen change of a known circumstance to reopen a judgment and decree." *Thompson*, 739 N.W.2d at 430-31. This court applies an abuse-of-discretion standard of review to a district court's ruling on a request to reopen a judgement and decree. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996).

Olmsted contends that continuing adherence to the terms of the judgement and decree is unjust because her liability on the mortgages and on Bank Cherokee's judgment is causing her various types of harm in her financial affairs, to the point that she is unable to "move forward in life." She contends that the district court should have reopened and amended the judgment and decree and granted her title to the farm in order to remedy those inequities. Olmsted's contention is in tension with the requirement that relief be based on a "development of circumstances substantially altering the information on a topic that was accepted earlier." *Harding*, 620 N.W.2d at 924. It appears that the parties contemplated the possibility that Olmsted might remain obligated on the mortgage loan with Bank Cherokee. The judgment and decree required Zarbok merely to "*attempt* to remove [Olmsted's] name from any mortgage associated with the homestead and property, in good faith." (Emphasis added). Furthermore, the judgment and decree specified a remedy for any ongoing obligation by Olmsted with respect to the farm, namely, that "[Zarbok] shall be responsible for, indemnify, and hold [Olmsted] harmless from all expenses associated with said homestead, including but not limited to mortgage and loan payments." These provisions of the judgment and decree provided the district court with a basis for

7

concluding that Olmsted had not shown an unforeseen change in circumstances. *See id.* In addition, the district court denied relief in part because it previously had entered judgment in favor of Olmsted and against Zarbok in the amount of approximately $324,000 and was of the belief that Olmsted had not exhausted her remedies with respect to that judgment. For these reasons, the district court did not abuse its discretion by declining to reopen the judgment and decree.

The foregoing analysis should not be interpreted as foreclosing the possibility of some form of relief at some time in the future. The above-mentioned provisions of the judgment and decree concerning the Bank Cherokee mortgage likely were not intended to operate indefinitely. Likewise, the circumstances in which Olmsted finds herself today likely cannot be justified indefinitely. One basic goal of a stipulated judgment and decree is to provide "finality" and "to bring resolution to what frequently has become an acrimonious relationship between the parties." *Shirk*, 561 N.W.2d at 521-22. That goal is not being realized in this case. Although the courts rarely find grounds to reopen a judgment and decree, there are circumstances in which such relief is proper. *See, e.g.*, *Harding*, 620 N.W.2d at 924 (reversing district court's denial of motion to reopen judgment and decree to determine fair distribution of property because information arising after MTA substantially altered information upon which MTA was based). We express no opinion as to whether such relief ultimately is appropriate in this matter because the answer to that question depends on the evidence and arguments that are presented to the district court,

8

which is best suited to analyze the relevant issues and determine whether the judgment and decree "is no longer equitable." *See* Minn. Stat. § 518.145, subd. 2(5).

**Affirmed.**