*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1012**

In re the Marriage of:

Todd Charles Bork, petitioner,
Appellant,

vs.

Carolyn Mitsu Bork,
Respondent.

**Filed January 5, 2026**
**Affirmed**
**Smith, Tracy M., Judge**

Pine County District Court
File No. 58-FA-08-315

Lindsay K. Fischbach, Jason C. Brown, Barna, Guzy & Steffen, LTD., Minneapolis, Minnesota (for appellant)

Katherine L. Rotmil, Johnson/Turner, Forest Lake, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Slieter, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

Appellant Todd Bork[1] challenges the district court's order granting the motion of his former spouse respondent Carolyn Bork to enforce Todd's obligations under the

---

[1] Because the parties have the same last name, we refer to the parties by their first names.

parties' stipulated dissolution judgment and decree. The district court ordered Todd to pay Carolyn $15,171 as reimbursement for past health-insurance costs and $104,200 for past spousal maintenance, plus ongoing maintenance of $200 per week. The district court also ordered Todd to list the parties' two remaining real properties for sale. Todd challenges all of these decisions and, in addition, argues that the district court erred by not holding an evidentiary hearing. We affirm.

**FACTS**

Todd and Carolyn were married for 15 years until their marriage was dissolved in 2009 by a stipulated judgment and decree (J&D). At the time of the stipulated J&D, the parties owned multiple parcels of real estate. They also owned two businesses—a tree farm and a business (sometimes referred to as "the company" in the J&D) that also owned real properties.

The J&D provided for the sale of the real properties and the businesses' stock and assets and directed the distribution of proceeds after sale. The J&D also provided that, pending sale, titles to the real properties would be held by the parties as tenants in common and Todd would operate the businesses. The J&D provided that the real estate and business stock and assets would be listed for sale no later than December 1, 2008,[2] and would be sold "forthwith."

The J&D also provided that Todd "shall continue to pay" the sum of $389 per month to "maintain" Carolyn on the company's health insurance. That obligation was to continue

_____

[2] This date preceded the parties' signing of the stipulated findings of fact, conclusions of law, and order for judgment and judgment and decree.

2

until the earlier of four identified events, none of which had occurred by the time of Carolyn's motion to enforce the J&D.

The J&D also provided that Todd pay Carolyn spousal maintenance in a defined amount that depended on the amount of "gross sales from operations" over a two-month period. If gross sales from operations were less than $500,000, then the amount of spousal maintenance would be $200 per week. The spousal-maintenance obligation was to continue subject to the same four terminating conditions as the health-insurance obligation.

Four months after the J&D was entered, the parties together commenced a civil action against a bank regarding loans on the parties' real properties. In 2010, as part of that litigation, a receiver was appointed to manage the parties' businesses and related assets. In 2012, a judgment was entered in favor of the bank against the parties, and the bank subsequently sold several—but not all—of the parties' properties to satisfy the judgment. Sometime in 2011 or 2012, Todd stopped paying Carolyn spousal maintenance. In 2013 or 2014, Carolyn stopped receiving health insurance through the business. In 2018, the businesses were administratively dissolved. The parties have since been involved in various lawsuits in Minnesota and Wisconsin regarding the sale of their remaining real properties. The parties continue to own two properties, parcels C7 and A2, as tenants in common. Todd currently resides on parcel C7 and allows someone he knows to live on parcel A2 in a mobile home.

In May 2023, Carolyn filed a motion in district court to enforce the provisions of the J&D, seeking, among other things, reimbursement for health insurance, payment of spousal maintenance, and to compel Todd to sell the two remaining properties and

3

distribute the proceeds. Todd filed a responsive motion, asking that the district court deny Carolyn's motion in its entirety or, in the alternative, terminate his spousal-maintenance obligation or, in the second alternative, hold an evidentiary hearing on the matter.

After hearing arguments on the motions but without holding an evidentiary hearing, the district court filed an order granting Carolyn the relief at issue here and denying Todd's motion.[3] The district court ordered Todd to pay Carolyn $15,171 for the cost of health insurance from 2014 to 2018; the district court cut off Todd's obligation in 2018 because that is when the businesses were administratively dissolved. The district court also ordered Todd to pay Carolyn $104,200 for ten years of unpaid spousal maintenance, plus ongoing maintenance of $200 per week until the terms of the original decree no longer require the payments to be made. The district court also ordered Todd to list the parties' two remaining properties for sale by June 1, 2024, and to abide by the terms of the original decree regarding the sale proceeds.

Todd appeals.

## DECISION

This matter concerns the district court's order enforcing the terms of the parties' J&D. "This court will not disturb an appropriate order to clarify, implement, or enforce terms of a decree, absent an abuse of discretion." *Nelson v. Nelson*, 806 N.W.2d 870, 871 (Minn. 2011). A district court abuses its discretion "by making findings of fact that are

---

[3] The district denied some of Carolyn's requested relief, but Carolyn raises no challenge to that decision.

unsupported by the evidence, misapplying the law, or rendering a decision that is 'against logic and the facts on record.'" *Knapp v. Knapp*, 883 N.W.2d 833, 835 (Minn. App. 2016).

Todd makes four arguments, which we address in turn. He argues that the district court erred by (1) ordering that Todd reimburse Carolyn for the cost of health insurance, (2) ordering that Todd pay Carolyn for past spousal maintenance and pay future spousal maintenance, (3) ordering that Todd list the parties' two remaining real properties for sale, and (4) denying an evidentiary hearing.

## I.     The district court did not err by determining that Todd must reimburse Carolyn for the cost of health insurance from 2014 to 2018.

Todd argues that the district court erred by determining that Todd owes Carolyn for the health insurance from December 2014 through March 2018.

Todd focuses on the following provision in the parties' J&D:

> 7.     **ADDITIONAL TEMPORARY MONTHLY PAYMENTS TO RESPONDENT.** [Todd] shall continue to pay the following on behalf of [Carolyn]
>
> . . . .
>
> (c)     Maintain Respondent on the Company's health insurance in the sum of $389.00 per month,
>
> until the earlier of the following events
>
> (a)     Death of [Todd],
> (b)     Death of [Carolyn],
> (c)     Remarriage of [Carolyn],
> (d)     The parties' real estate and business has been sold as described below.

The district court concluded that, under that paragraph, Todd owes Carolyn $15,171 for reimbursement for health insurance from December 2014 through March 2018. The

5

district court cut off Todd's liability as of March 2018—the month that the business was administratively dissolved—finding that, at that time, it became impossible for health insurance to be provided through the business.

Todd argues that the district court erred for two reasons. First, he argues that the district court erred in interpreting the J&D because its plain language did not require Todd to personally pay for Carolyn's health insurance. Second, Todd argues that, even if he did have a personal obligation, it became impossible for him to provide health insurance for Carolyn through the business starting in 2010, when the receiver was appointed to manage the business. Neither argument is persuasive.

## A.    Interpretation of Insurance Provision

Todd argues that the insurance provision of the J&D only required him to provide insurance *through the business* and did not establish a personal obligation to pay for Carolyn's insurance. But the J&D states that Todd "shall continue to pay" a defined sum of $389 per month toward Carolyn's health insurance. In addition, the J&D is clear that there are four terminating conditions for the health-insurance obligation: either party's death, Carolyn's remarriage, or the parties' real estate and businesses having been sold. These terminating conditions notably do not include the appointment of a receiver for the business and, as the district court observed, none of the terminating conditions have occurred.

While the parties may not have contemplated a situation where those terminating conditions would have yet to occur 14 years later, Todd has not shown that the district court

6

erred by interpreting the J&D to require that he pay $389 per month for Carolyn's health insurance for as long as none of the terminating conditions have occurred.

## B.      Impossibility Defense

Todd next argues that the district court erred by not determining that the provision of health insurance became impossible when a receiver was appointed in 2010, rather than in 2018 when the businesses were dissolved.

In the district court, as a defense to his J&D-based health-insurance obligation, Todd asserted the contractually based defense of impossibility of performance. *See, e.g.*, *Powers v. Siats*, 70 N.W.2d 344, 348 (Minn. 1955) (describing impossibility defense to contract claims). In the district court, Carolyn did not argue that the contractually based impossibility-of-performance defense did not apply to judgment-based obligations. Instead, she argued that it did not apply to these particular facts. Following the parties' briefing, the district court assumed the applicability of the impossibility defense and determined that Todd's performance became impossible when the businesses were dissolved but not earlier.

We have doubts about whether the doctrine of contract impossibility applies in the context of stipulated judgments and decrees. *See Pooley v. Pooley*, 979 N.W.2d 867, 874 (Minn. 2022) (recognizing that, "even though we treat dissolution stipulations as contracts, they have unique features"); *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997) (stating that the "sole relief" from a stipulated J&D "lies in meeting the requirements of Minn. Stat.

7

§ 518.145, subd. 2").[4] But, because both parties assumed that the defense was available in the district court, the district court considered the defense, and neither party argues on appeal that the doctrine does not apply,[5] we address Todd's argument.

We conclude that, even if the doctrine applies, Todd has failed to show that the district court erred by determining that Todd's health-insurance obligation did not become impossible in 2010. The crux of Todd's argument is that the parties did not "foresee or provide for the appointment of a receiver for the businesses" when the J&D was finalized. Under the impossibility doctrine, a party may be excused from a contractual duty "when, due to the existence of a fact or circumstance of which the promisor at the time of the

---

[4] We note that, in a family case, a *stipulation* is the agreement between the spouses (*before* it is adopted or rejected by the district court), while a *stipulated judgment* (or a *stipulated order*) is the judgment (or order) that the district court enters (or files) based on that agreement if the district court actually adopts the stipulation. *See Toughill v. Toughill*, 609 N.W.2d 634, 638 n.1 (Minn. App. 2000) (noting that "[t]he district court is a third party to dissolution proceedings and has the authority to refuse to accept the terms of a stipulation in part or *in toto*" (quotation omitted)). If a district court adopts a stipulation, the stipulation ceases to exist as a separate creature and is "merged" into the judgment (or order). *Hecker v. Hecker*, 568 N.W.2d 705, 709 (Minn. 1997). Stipulations are "accorded the sanctity of binding contracts" and "cannot be repudiated or withdrawn from [by] one party without the consent of the other, except by leave of the court for cause shown," but, "upon entry of a judgment and decree based on a stipulation, different circumstances arise, as the dissolution is now complete and the need for finality becomes of central importance." *Shirk*, 561 N.W.2d at 521-22 (quotation omitted). "Therefore, when a judgment and decree is entered based upon a stipulation, we hold that the stipulation is merged into the judgment and decree and the stipulation cannot thereafter be the target of attack by a party seeking relief from the judgment and decree." *Id.* As a result, to the extent the *stipulation* here was adopted by the district court, it was "merged" into the resulting *stipulated judgment* the district court based on that *stipulation*. *See Christiansen v. Christiansen*, No. A22-1788, 2024 WL 413495, at *8 n.6 (Minn. App. Feb. 5, 2024) (making similar observations).

[5] Carolyn does not challenge the district court's determination that the impossibility defense terminates Todd's obligation to pay her for health insurance in December 2018 when the businesses were dissolved.

8

making of the contract neither knew nor had reason to know, performance becomes impossible" or it "becomes impracticable" because it would impose "an excessive or unreasonably burdensome hardship, loss, expense, or injury." *Powers*, 70 N.W.2d at 348.

Though the district court found that the impossibility defense cuts off Todd's obligation in December 2018 when the businesses were dissolved, it rejected the argument that the defense applies prior to that time. The district court's determination is supported by the record. The parties' lawsuit that led to the appointment of the receiver began just four months after the J&D was entered, making it unlikely that the parties were unaware that litigation might soon affect their businesses and properties. In addition, Carolyn continued to receive insurance payments until sometime in 2013 or 2014—three to four years after the appointment of the receiver. This fact supports the district court's determination that the appointment of the receiver in 2010 did not, in fact, render the provision of health insurance impossible.[6]

In sum, Todd has failed to demonstrate error in the district court's interpretation or application of the health-insurance requirement in the J&D.

---

[6] We note that, if Todd wished to challenge his obligation under the J&D when the receiver was appointed, the preferred avenue was to bring an action to modify the J&D under Minnesota Statutes section 518.145 instead of waiting for Carolyn to enforce her rights under the agreement and only then asserting that there was an unanticipated change in circumstance excusing his obligation.

**II.** **The district court did not err by determining that Todd owes Carolyn past spousal maintenance and continues to have an obligation to pay spousal maintenance.**

Todd argues that the district court erred by ordering him to pay past spousal maintenance and ongoing spousal maintenance.

The J&D provides that Todd will pay Carolyn spousal maintenance in a specified amount ranging from $200 to $650 per week depending on the "gross sales from operations" over an identified two-month period in 2009. Under the provision, if gross sales "are less than $500,000," spousal maintenance is $200 per week. The J&D further specifies that the spousal-maintenance obligation continues subject to the same four terminating conditions as the health-insurance obligation: the death of either party, Carolyn's remarriage, or "[t]he parties' real estate and business has been sold as described below." The parties dispute precisely when Todd stopped paying spousal maintenance, but it was sometime in 2011 or 2012.

The district court concluded that Carolyn was owed past spousal maintenance of $200 per week from May 30, 2013, forward for a total of $104,200. In so ruling, the district court applied the ten-year statute of limitations to Carolyn's claim, excluding all installments that were due more than ten years before the filing of the her motion.[7] The district court also ruled that Todd continues to owe Carolyn spousal maintenance in the amount of $200 per week until "the terms of the original decree no longer require the payments to be made."

---

[7] Carolyn does not challenge this decision on appeal.

10

Todd argues that the district court erred "by strictly enforcing the language of the [J&D] without regard for the unanticipated changes in the parties' circumstances from those at time of entry of the [J&D]." Specifically, Todd argues that (1) his obligation to pay spousal maintenance was excused at the time of the receiver's appointment in 2010 because performance became impossible or impracticable, (2) the equitable doctrine of laches applies because Carolyn unreasonably delayed enforcement of her right to spousal maintenance, (3) reopening of the J&D under Minnesota Statutes section 518.145 (2024) is required because the J&D is no longer equitable, and (4) fairness and equity require relief from the spousal-maintenance obligation. We address each argument in turn.

## A.   Impossibility

Based on the parties' presentations in the district court, the district court considered the impossibility defense to Carolyn's claim for spousal maintenance. Again, we have doubts as to whether contract impossibility may be applied to the provisions of a stipulated judgment and decree, and Todd cites no additional authority that supports an impossibility defense in the context of spousal maintenance—for which the standard vehicle to obtain an alteration of an existing obligation is a motion to modify the award. *See* Minn. Stat. §§ 518.552, subd. 5b (2024) (current process to modify maintenance); 518A.39 (2022) (prior process to modify maintenance). Even if impossibility applies, however, Todd has failed to convince us that the district court erred.

Todd argues that his spousal-maintenance obligation was intended to end soon after entry of the J&D when the businesses and real property were expected to be sold and that the appointment of the receiver in 2010 frustrated their prompt sale. He asserts that he

11

therefore should be excused from his obligation. But the J&D identifies a baseline amount of maintenance that is owed if gross sales over a specified two-month period in 2009 were "less than" a certain amount, and it identifies four specific conditions for the termination of the obligation. Todd makes no argument that the $200 sum is inaccurate, and he makes no argument that any of the four terminating conditions laid out in the J&D have been met. Todd's argument that the district court erred by not finding that it was impossible or impracticable for him to pay his spousal-maintenance obligation is unpersuasive.

## B. Laches

Todd argues that the district court erred when it refused to apply the doctrine of laches. He contends that Carolyn's "failure to timely enforce her right to spousal maintenance" rendered inequitable the requirement that Todd pay past and ongoing spousal maintenance.

We review a district court's decision on an issue of laches for an abuse of discretion. *In re Marriage of Opp*, 516 N.W.2d 193, 196 (Minn. App. 1994), *rev. denied* (Aug. 24, 1994). Laches is an equitable defense that applies "to an action brought after an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn. 1979). Laches is generally limited to actions not governed by an express statute, including statutes of limitations. *Id.* (citing *In re Barlow*, 188 N.W. 282, 283 (Minn. 1922)). But in equitable actions, laches can be applied even if the action is governed by a statute of limitations. *Aronovitch v. Levy*, 56 N.W.2d 570, 573-74 (Minn. 1953).

The parties do not address whether Todd's statutory ability to seek to modify his maintenance obligation is a basis not to apply laches under *M.A.D.* and *Barlow*. Thus, for purposes of this appeal, we assume that the ability to modify maintenance does not preclude application of laches.

A number of elements are relevant to the laches defense: "(1) availability of the defense as determined by the nature of the action, (2) reasons for delay, (3) prejudice, and (4) policy considerations." *M.A.D.*, 277 N.W.2d at 29. Prejudice is a "circumstance of importance, in determining whether a plaintiff has been guilty of laches, that the situation of the parties has changed, or that material witnesses have died, or that because of lapse of time evidence has otherwise been lost, so that the ascertainment of the essential facts is made difficult, and the exact facts upon which the rights of the parties depend must necessarily be in doubt." *Aronovitch*, 56 N.W.2d at 574-75 (citing *Sweet v. Lowry*, 142 N.W. 882, 883 (Minn. 1913)).

Here, the district court concluded that laches does not apply because the action is governed by a statute of limitations. It further noted that, even if laches did apply, Todd did not demonstrate "any facts outside of the time passed that would necessitate its application." We see no abuse of discretion in these decisions.

First, the district court's determination that laches does not apply due to an applicable statute of limitations is supported by the fact that Carolyn's spousal-maintenance relief was cut off by the statute of limitations. Any potential inequity stemming from Carolyn's delay was accounted for by the limits imposed by the statute of limitations.

13

Second, the record supports the district court's determination that, even if laches were applicable, Todd has failed to show that any additional factors that make the "ascertainment of the essential facts" more difficult due to the delay. *Id.* As the district court noted, Todd did not point to the unavailability of any witnesses or assert the loss of any evidence. And, as the district court noted, Todd did not specifically explain why he would be prejudiced by the delay in suit, nor did he point to applicable policy considerations warranting application of the doctrine. Accordingly, we conclude that the district court did not abuse its discretion in not barring Carolyn's claim based on laches.

## C.     Relief Under Minnesota Statutes Section 518.145

Todd argues that he is entitled to relief from the J&D because its application is no longer equitable pursuant to Minnesota Statutes section 518.145. A district court's decision whether to reopen a judgment and decree is reviewed for an abuse of discretion. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996).

Minnesota Statutes section 518.145, subdivision 2(5), provides that a district court may reopen a judgment and decree if it "is no longer equitable that the judgment and decree or order should have prospective application." To reopen a judgment and decree on this basis, "the inequity must result from 'the development of circumstances substantially altering the information' known when the dissolution judgment and decree was entered. The moving party must present more than merely a new set of circumstances or an unforeseen change of a known circumstance to reopen a judgment and decree." *Thompson v. Thompson*, 739 N.W.2d 424, 430-31 (Minn. App. 2007) (quoting *Harding v. Harding*, 620 N.W.2d 920, 923-34 (Minn. App. 2001), *rev. denied* (Minn. Apr. 17, 2001)).

14

The district court found that Todd did not submit sufficient supporting evidence that the parties believed spousal-maintenance payments would last only one or two years. The district court further stated that, even if Todd had offered such evidence, the parties' mistake as to how long it would take to sell the properties was merely an "unforeseen change of a known circumstance," insufficient to justify relief. *Id.* The district court noted that the parties could have contemplated this situation in the original J&D and that, "[b]y not doing so, [Todd] chose to bear the risk that none of the events ending spousal maintenance would happen for some time." Moreover, the district court noted that Todd did not seek to modify the terms of the J&D at any time before Carolyn's motion, choosing instead "to act as if some of the terms of the agreement were no longer in effect . . . without raising the issue with either [Carolyn] or the Court." The district court rejected Todd's request to reopen the J&D and instead chose to enforce its terms.

Todd has not shown that the district court's factual findings lack record support, that the district court misapplied the law, or that its decision is contrary to logic or the facts in the record. *See Knapp*, 883 N.W.2d at 835. He has therefore failed to establish that the district court abused its discretion in rejecting his request to reopen the J&D under section 518.145, subdivision 2.

### D.    Fairness and Equity

Todd also argues that fairness and equity require us to conclude that he has no further obligations to Carolyn. He asserts that, until Carolyn brought her motion to enforce the J&D in May 2023, he was "under a reasonable belief that his obligations to [Carolyn]. . . had terminated or been satisfied." But we do not see that Todd made this

15

fairness-and-equity argument about the relief at issue here before the district court. Nor do we see that the district court addressed the issue. Because Todd did not raise this issue before the district court and the district court did not address it, the question is not properly before us, and we decline to address it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate courts generally review only "those issues that the record shows were presented to and considered by the trial court in deciding the matter before it").

### III. The district court did not err by ordering Todd to list the two remaining properties for sale.

Todd also challenges the district court's order requiring Todd to list the parties' two remaining properties for sale and to cooperate with Carolyn to ensure the sale of the properties, in accordance with the original decree. Todd argues that the district court erred by not applying the ten-year statute of limitations to the property-sale provision of the J&D.[8]

We conclude that this argument is forfeited. In his appellate brief, Todd argues that, while the district court properly applied the ten-year statute of limitations to Carolyn's request for past spousal maintenance, the district court should have applied the statute of limitations to bar her request for an order to sell the properties. In his memorandum of law opposing Carolyn's motion in the district court, Todd outlined the general law governing

---

[8] Todd also argues that reversal of the district court's order to sell the properties is required by fairness and equity. He again argues that he was under a reasonable belief that his obligations were terminated or satisfied because Carolyn failed to take action earlier. And he argues that enforcement of the J&D related to these properties would be unfair because he has been paying the property taxes on the properties. But Todd did not clearly raise the fairness-and-equity issue before the district court, and the district court did not address this issue. We therefore decline to address the issue here. *See id.*

application of the statute of limitations to dissolution judgments and decrees. He then immediately wrote:

> With respect to specific components in a divorce decree, Minnesota law provides that Divorce decrees calling for support payments in the future are entitled to enforcement by the party to whom the support was awarded, provided each installment of support payments shall be treated independently and separately and recovery allowed only for those payments which accrue within 10 years from the date of the commencement of the action. *Dent v. Casaga*, 208 N.W.2d 734, 747 (Minn. 1973).

In oral argument before the district court, Todd argued that the ten-year statute of limitations applies to spousal maintenance; he made no mention of the statute of limitations with respect to sale of the properties.

In its order, the district court addressed the statute of limitations only with respect to spousal maintenance. It cited the same general law cited by Todd, and it then cited and applied the rule that, if a judgment is payable in installments, the statute of limitations bars claims for installments due more than ten years before commencement of the action. The district court did not address the statute of limitations with respect to the component of the J&D related to sale of the properties.

Generally, appellate courts address only the issues that were presented to and considered by the district court. *Thiele*, 425 N.W.2d at 582. A party has an obligation to clearly explain to the district court the relief that they seek and the basis for that relief. *Cf. Antonson v. Ekvall*, 186 N.W.2d 187, 189 (Minn. 1971). General language in a pleading is sufficient only if it "would alert anyone" to the claim at issue. *Id.*

Based on Todd's presentation of the statute-of-limitations issue in the district court and the district court's order, it is evident that it was not clear to the district court that Todd was asserting a statute-of-limitations issue with respect to the sale of the two properties. While Todd made general statements about the statute of limitations in his filing with the district court, his written argument quickly turned to the spousal-maintenance component of the J&D. And in his oral argument before the district court, he raised the statute of limitations only with respect to spousal maintenance. Moreover, when Todd received the district court's order addressing the statute of limitations only with respect to spousal maintenance, he did not move for amended findings regarding application of the statute of limitations with respect to the sale of the properties. *See* Minn. R. Civ. P. 52.02 (providing for motions to amend findings or make additional findings).

On this record, we conclude that Todd forfeited the argument that the district court erred by not applying the statute of limitations to bar enforcement of the J&D's requirement to place the parties' properties for sale. To rule otherwise would be to rule that the district court erred by not addressing a point that it had no reason to know it should address.

**IV.    The district court did not abuse its discretion by denying Todd's request for an evidentiary hearing.**

Todd argues that the district court abused its discretion in denying his request for an evidentiary hearing. "Whether to hold an evidentiary hearing on a motion generally is a discretionary decision of the district court, reviewed for an abuse of discretion." *Sieber v. Sieber*, 258 N.W.2d 754, 756 (Minn. 1977).

18

Motions in family court are generally decided without an evidentiary hearing, unless the district court determines that there is good cause for a hearing. Minn. R. Gen. Prac. 303.03(d) (noting some exceptions not relevant here); *Doering v. Doering*, 629 N.W.2d 124, 130 (Minn. App. 2001), *rev. denied* (Minn. Sept. 11, 2001). A district court may deny an evidentiary hearing "where there is no genuine issue of material fact in dispute and where a determination of the applicable law will resolve the controversy." *Thompson*, 739 N.W.2d at 430 (quotation omitted) (applying the summary-judgment standard to the "good cause" question under rule 303.03(d)).

Todd argues that "an Evidentiary Hearing would have provided the District Court with greater information regarding the circumstances at the time of the parties' [J&D], their and any other relevant witnesses' perspectives regarding what they expected to occur post-[J&D] and what actually occurred post-[J&D]."

But Todd made little argument before the district court as to why an evidentiary hearing was necessary. The supporting memorandum for Todd's motion did not even mention an evidentiary hearing. And Todd did not identify any reason that would constitute "good cause" to hold an evidentiary hearing. Todd provided an affidavit that included some contextual information about the parties' J&D but did not explain what additional evidence is missing or why that evidence could not have also been submitted via affidavit. At the hearing, Todd briefly argued that the evidentiary hearing would allow the parties to determine the exact date that spousal maintenance stopped being paid, but the exact date is immaterial because the parties agree that the payments stopped over ten years before the motion to enforce and the district court found that a claim for the earlier installments was

barred by the statute of limitations. Even when the evidence is viewed in the light most favorable to Todd, he has failed to show a genuine dispute of material fact requiring a hearing. Accordingly, the district court properly exercised its discretion in ruling on the parties' motions without a hearing.

**Affirmed.**